**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>85 FLATBUSH RHO MEZZ LLC, *et al.*,[1]<br><br>Debtors. | On appeal from U.S. Bankruptcy Court for the Southern District of New York<br>Jointly Administered Case No. 20-23280 (SHL) |
| 85 FLATBUSH MEZZ LLC,<br><br>Appellant,<br><br>v.<br><br>TH Holdco LLC,<br><br>Appellee. | Case No. 7:22-cv-06233-CS<br>(Related to Case No. 7:22-cv-06241-CS) |

**APPELLANT 85 FLATBUSH MEZZ LLC'S OPENING BRIEF**

Kevin J. Nash
GOLDBERG WEPRIN
FINKEL GOLDSTEIN LLP
1501 Broadway, 22nd Floor
New York, New York 10036
Telephone: (212) 221-5700
Facsimile: (212) 221-6532
Email: kjnash@gwulaw.com

M. Ryan Pinkston (*pro hac vice*)
SEYFARTH SHAW LLP
560 Mission Street, Suite 3100
San Francisco, California 94105
Telephone: (415) 544-1013
Facsimile: (415) 397-8549
Email: rpinkston@seyfarth.com

---

[1] The debtors in the underlying chapter 11 cases are 85 Flatbush RHO Mezz LLC, 85 Flatbush RHO Hotel LLC, and 85 Flatbush RHO Residential LLC (collectively, the "Debtors").

## <u>TABLE OF CONTENTS</u>

CORPORATE DISCLOSURE STATEMENT ............................................................................... 1

STATEMENT OF APPELLATE JURISDICTION ....................................................................... 2

STATEMENT OF ISSUES PRESENTED AND STANDARD OF REVIEW .................................. 2

PRELIMINARY STATEMENT ................................................................................................... 3

STATEMENT OF CASE AND RELEVANT FACTS ................................................................. 7

ARGUMENT ............................................................................................................................... 13

    POINT I. The Mezzanine Lender's Claims of Breach of the ICA Asserted in the Adversary Proceeding Presented an Important Threshold Issue to be Determined Before the TH Holdco Plan Became Fully Effective .................................................................................................................................. 13

    POINT II. The Bankruptcy Court Erred In Overruling Mezzanine Lender's Objections And Entering The Confirmation Order Without Finally Adjudicating Mezzanine Lender's Adversary Proceeding. .............. 15

    POINT III. The Bankruptcy Court Erred By Overruling Mezzanine Lender's Objection To TH Holdco's Invalid Voting Of Mezzanine Lender's Secured Claim. .......................................................................... 18

CONCLUSION ............................................................................................................................. 19

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ahuja v. LightSquared Inc. (In re LightSquared Inc.)*,
   534 B.R. 522 (S.D.N.Y. 2015) . Thus, the Confirmation Order ........................................................ 2

*In re Charter Commc'ns, Inc.*,
   691 F.3d 476 (2d Cir. 2012) ........................................................................................................ 3

*Cornhill Corp. v. S.S. Plants, Inc.*,
   9 N.Y.2d 595 (1961) .................................................................................................................. 14

*Deutsche Bank AG v. Metromedia Fiber Network, Inc. (In re Metromedia Fiber Network, Inc.)*,
   416 F.3d 136 (2d Cir. 2005) ...................................................................................................... 17

*In re Jer/Jameson Mezz Borrower II, LLC*,
   461 B.R. 293 (Bankr. D. Del. 2011) ......................................................................................... 19

*Marisa Christina, Inc. v. Freis*,
   646 F. Supp. 252 (S.D.N.Y. 1986) ............................................................................................ 18

*Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.*,
   500 F.3d 171 (2d Cir. 2007) ...................................................................................................... 18

*Muzak Corp. v. Hotel Taft Corp.*,
   1 N.Y.2d 42 (1956) .................................................................................................................... 14

*Nadeau v. Equity Residential Properties Mgmt. Corp.*,
   251 F. Supp. 3d 637 (S.D.N.Y. 2017) ...................................................................................... 18

*Teachers Ins. And Annuity Ass'n of Am. v. CRIMI MAE Servs. Ltd. P'ship*,
   481 Fed. App'x 686 (2d Cir. 2012) ........................................................................................... 15

*In re Tribune Co.*,
   464 B.R. 126 (Bankr. D. Del. 2011) ......................................................................................... 19

**Statutes**

11 U.S.C. §506(a) .......................................................................................................................... 3

11 U.S.C. § 1121(c) ...................................................................................................................... 16

28 U.S.C. §§ 157(a) and 1334(b) ................................................................................................... 2

28 U.S.C. § 158(a) .......................................................................................................................... 2

ii

**Other Authorities**

Federal Rule of Bankruptcy Procedure 8015 ................................................................................ 21

Federal Rule of Bankruptcy Procedure 8016 ................................................................................ 21

Federal Rule of Civil Procedure 12(c) ........................................................................................... 7

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rules of Bankruptcy Procedure 8012 and 8014, Appellant 85 Flatbush

Mezz LLC hereby states that one-hundred percent (100%) of the membership interests in 85

Flatbush Mezz LLC are held by private individuals and that no public corporation owns ten percent

(10%) or more of the interests in 85 Flatbush Mezz LLC.

## STATEMENT OF APPELLATE JURISDICTION

Jurisdiction before the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") with respect to the Debtors' bankruptcy cases and confirmation of the Second Amended Chapter 11 Plan (JA-002452-2493 (the "Plan"))[2] proposed by Appellee TH Holdco LLC ("TH Holdco") was proper pursuant to 28 U.S.C. §§ 157(a) and 1334(b).  The order from which this appeal is taken, the Bankruptcy Court's Findings of Fact, Conclusions of Law, and Order Confirming TH Holdco LLC's Second Amended Chapter 11 Plan, as Modified by This Order (JA-003478-3601) (the "Confirmation Order")), is a final order.  *See, e.g.*, *Ahuja v. LightSquared Inc. (In re LightSquared Inc.)*, 534 B.R. 522, 524 n.2 (S.D.N.Y. 2015) ("The confirmation of a plan in a Chapter 11 proceeding is an event comparable to the entry of a final judgment in ordinary civil litigation.") (quotation omitted).  Thus, the Confirmation Order is appealable to this Court as of right pursuant to 28 U.S.C. § 158(a).  Appellant 85 Flatbush Mezz LLC ("Mezzanine Lender") timely filed its notice of appeal on July 20, 2022.  (*See* JA-003695-3823.)

## STATEMENT OF ISSUES PRESENTED AND STANDARD OF REVIEW

1.      The overriding question for appeal from Mezzanine Lender's perspective is whether Mezzanine Lender retained any rights in bankruptcy to contest confirmation of the TH Holdco Plan based upon the Adversary Proceeding defined below to enforce a breach of the parties' Intercreditor Agreement, dated as of September 19, 2019 (the "ICA") (JA-000505-000567), executed by TH Holdco's predecessor, 85 Flatbush Avenue 1 LLC (the "Original Lender").  As corollaries to this central question the following issues are also presented:

2.      Whether the Bankruptcy Court erred in overruling Mezzanine Lender's objection to plan confirmation without a final adjudication of Mezzanine Lender's pending adversary

---

[2] Citations to "JA-___" refer to pages in the contemporaneously filed Joint Appendix of Appellants.

proceeding, styled *85 Flatbush Mezz LLC v. TH Holdco LLC*, Adv. Proc. No. 22-07022 (the

"Adversary Proceeding"), which action goes to the question of whether Mezzanine Lender or TH

Holdco is the proper senior secured lender with respect to the Debtors following the Original

Lender's breach of the ICA.  This legal question is reviewed *de novo*.  *See In re Charter Commc'ns,*

*Inc.*, 691 F.3d 476, 482-83 (2d Cir. 2012).

3.      Whether the Bankruptcy Court erred in overruling Mezzanine Lender's objection to

plan confirmation on the basis that TH Holdco is entitled to vote Mezzanine Lender's secured claim

in favor of TH Holdco's Plan pursuant to Section 9(d) of the ICA notwithstanding the pending

dispute between Mezzanine Lender and TH Holdco regarding the parties' rights under the ICA as

alleged in the Adversary Proceeding (JA-000491-000571).  This legal question is reviewed *de novo*.

*See Charter Commc'ns*, 691 F.3d at 482-83.

## PRELIMINARY STATEMENT

Having been relegated to a spectator as its own financial burial, Mezzanine Lender appeals

from the Confirmation Order approving TH Holdco's Plan that offered recoveries to all other

creditors in bankruptcy except Mezzanine Lender, which is shut-out.  During the bankruptcy,

Mezzanine Lender asserted total claims in the sum of $7,787,500 based upon mezzanine loans made

to the lead Debtor (85 Flatbush RHO Mezz LLC).   The mezzanine financing was made to

supplement a simultaneous senior mortgage financing issued by the Original Lender.

Despite a sizeable claim, Mezzanine Lender was characterized as a Class 11 creditor under

the TH Holdco Plan and stripped of any rights pursuant to the parties' ICA, except the ephemeral

ability (only in theory not reality) to receive surplus from a sale of the properties after all other

classes of claims were paid in full with interest.  Of course, given the fact that TH Holdco alone

considered itself to be undersecured under 11 U.S.C. §506(a) (*i.e.,* its collateral was worth less than

the total secured debt), the Bankruptcy Court and all parties alike understood that a return on equity

3

was virtually impossible in the bankruptcy.  Indeed, Mezzanine Lender faced the complete

forfeiture of its claims under the TH Holdco Plan.  This remained the case even though the pending

Adversary Proceeding was filed by Mezzanine Lender prior to the start of confirmation hearing,

seeking specific performance and declaratory judgment finding that TH Holdco and the Original

Lender violated the ICA by failing to provide purchase option notices under Section 11(a) thereof

on multiple occasions.  As a consequence, Mezzanine Lender asserted it was entitled to purchase

and acquire the senior mortgage debt from TH Holdco to protect its position based upon a purchase

price fixed as of the date of the initial defaults in July 2020.

Facing forfeiture of its claims under the TH Holdco Plan, it is hardly surprising that

Mezzanine Lender supported the Debtors' efforts to file a competing plan of reorganization which

would have returned $4.5 million to Mezzanine Lender, while also paying TH Holdco the full

amount of its allowed claim without an auction sale of the underlying properties based upon an

infusion of funds from a new investor group headed by a well-respected businessperson, one Daryl

Hagler.

The Bankruptcy Court, however, overruled all objections to confirmation and did not permit

the Debtors to proceed with a competing plan, instead confirming the TH Holdco Plan and

authorizing the properties to be sold immediately at auction subject to TH Holdco's credit bid

rights.  A sale was scheduled in early August.  As expected there were no other bids received

besides TH Holdco's credit bid.  However, Mezzanine Lender was able to obtain a sixty (60) day

stay pending appeal from the Bankruptcy Court staying ta closing and the Effective Date of the TH

Holdco Plan pursuant to Order dated August 11, 2022.  The stay has prevented this appeal from

becoming equitably moot.

Hence, there is still time to correct the errors made below which handcuffed Mezzanine Lender at Confirmation under the mistaken belief that Mezzanine Lender always retained a claim for damages against the Senior Lender even if the properties were sold.  While Judge Drain is held in great esteem, he is not infallible, and the Bankruptcy Court rulings gave far too much weight to the import of Section 9(d) of the ICA without properly reconciling that Mezzanine Lender retained independent rights and remedies under Section 31 of the ICA to sue for declaratory judgment, specific performance and injunctive relief following the breach of Section 11(a).  Nowhere in the ICA is it stated that the provisions and remedies of Section 31 are subordinate to TH Holdco's rights under Section 9(d).  Nonetheless, according to the Bankruptcy Court:

> In addition, the basis for the mezz lender's vote is premised upon it having a right to do so, notwithstanding Section 9D of its intercreditor agreement which -- in which it agreed and provided a power of attorney to support that agreement that the senior lender, in this case TH Holdco, has the right to vote its claim on a bankruptcy plan. That agreement, I believe, is binding. And the mezz lender would, therefore, have to show that it is relieved under some applicable principle from it.

> It commenced a lawsuit to determine that the lender was in default under the intercreditor agreement, because it did not provide a timely notice or a notice of a purchase option event which, under the intercreditor agreement, would give the mezz lender the right to exercise the right to purchase the senior loan under Section 11 of the intercreditor agreement. That lawsuit is still in its very early stages, notwithstanding that the potential importance of the decision on the lawsuit either here or, if the Court ultimately abstained, in the -- or didn't accept jurisdiction over the matter, has been highlighted at least for several months, including at the hearing on the disclosure statement on May 16th where it was the subject of considerable discussion starting at page 34 of the transcript.

> And I urge the parties to focus on discovery in that lawsuit as well as the jurisdictional issues raised by it highlighting the decisions by Judges Peck and Chapman on similar issues involving intercreditor agreements and whether the parties wanted to bring on motions for summary judgment and/or to dismiss. I don't believe any intercreditor agreement has been submitted -- I mean, I'm sorry, any pretrial order has been submitted to me setting up a schedule for discovery or consideration of summary judgment motions. I believe there is a motion to dismiss on in August.

But I've not decided any of the issues raised in that lawsuit. And they were contested heavily, including the proper remedy. I will also note that that lawsuit seeks performance of the purchase option at the price when it should have been exercised.

And in light of that, I find it very hard to believe that the mezz lender can defeat the senior lender's exercise of its rights under the intercreditor agreement, including Section 9D, at this stage of the case. I will note further that the purchase option section does state in paragraph 11A:

"The failure of senior lender to provide a purchase notice to mezzanine lender regarding the occurrence of a purchase option event shall have no adverse effect on senior lender other than the resulting extension of the time in which the purchase notice may be given."

(*See* JA-003640-003642.)

The Bankruptcy Court's reliance on Section 9(d) to the exclusion of Section 31 was error. Instead, the Bankruptcy Court was required to harmonize the provisions of 9(d) with the provisions of Section 31 to give Mezzanine Lender at least the opportunity of obtaining a substantive ruling in the Adversary Proceeding relating to TH Holdco's breach of the ICA prior to the TH Holdco Plan becoming fully effective. This would have been consistent with the well-recognized rule of construction that "no provision of a contract should be left without force and effect". Yet, in the Bankruptcy Court's erroneous view, Section 31 was overridden and had no application here except, perhaps, to carve-out a post-sale damages claim in favor of Mezzanine Lender even though the parties themselves acknowledged under Section 31 of the ICA that damages were not adequate, and equitable relief was the proper remedy.

In reality, the Adversary Proceeding was progressing as of June 30, 2022. Prior to that time, on May 10, 2022, Mezzanine Lender had, in fact, filed a proposed Case Management Order with deadlines for depositions to be held in July and motions to be filed by August 30, 2022 (*See,* Adv. Pro. ECF No. 10). The Bankruptcy Court commented on May 16, 2022 that Mezzanine Lender's schedule was reasonable, and, in fact, Mezzanine Lender had already produced documents in

response to the TH Holdco demands.  Thus, the Bankruptcy Court's visceral belief that the Adversary Proceeding was not progressing was erroneous.  As of June 30, 2022, it was literally a matter of two months before the parties' motions could or would be filed and heard.

There was no immediate urgency on June 30, 2022 to proceed with a sale.  Instead, Mezzanine Lender requested that the Debtors be given the full opportunity to present their competing plan while the parties to the Adversary Proceeding prepared and filed their respective motions.  As an aside, those motions were, in fact, filed in August, and TH Holdco's motion to dismiss under Federal Rule of Civil Procedure 12(c) has been argued and taken under advisement, with Mezzanine Lender ready to proceed with its own motion for partial summary judgment if jurisdiction is sustained.

This Court on appeal can right the elimination of Mezzanine Lender's rights by reversing the Bankruptcy Court decision to immediately confirm the TH Holdco Plan without first deciding whether there was a breach of the ICA by TH Holdco and its predecessor, and the materiality of the same.  These matters should be remanded back to the Bankruptcy Court to be determined in the context of the overall bankruptcy case, replete with the Debtors' opportunity to proceed with its own plan of reorganization.  To hold otherwise eliminates Mezzanine Lender's express rights under Section 31 of the ICA which cannot be ignored irrespective of Section 9(d) of the ICA.

## STATEMENT OF CASE AND RELEVANT FACTS

85 Flatbush RHO Hotel LLC ("Hotel") and 85 Flatbush RHO Residential LLC ("Residential") own a hotel and residential property, respectively, located at 85 Flatbush Extension, Brooklyn, New York (the "Property").  85 Flatbush RHO Mezz LLC ("Mezz"), in turn, is the one-hundred percent (100%) owner Hotel and Residential.  In connection with Hotel's and Residential's purchase of the Property, they obtained a loan ("Senior Loan") from 85 Flatbush Avenue 1 LLC as the Original Lender secured by the Property as collateral, and Mezz simultaneously entity obtained

a mezzanine loan ("Mezz Loan") from Mezzanine Lender secured by Mezz's membership interests in Hotel and Residential.  To govern their respective rights and obligations vis-à-vis one another as lenders to the Debtors, Mezzanine Lender and Original Lender entered into the ICA on September 19, 2019.  The ICA provides Mezzanine Lender with certain purchase option rights, as follows:

Section 11.      Right to Purchase Senior Loan.

(a)      Upon the occurrence of a Purchase Option Event, Senior Lender shall provide prompt written notice thereof to Mezzanine Lender (a "**Purchase Option Notice**"), and Mezzanine Lender shall have the right to elect to purchase, in whole but not in part, the Senior Loan for the Loan Purchase Price, payable in immediately available funds, by delivering to Senior Lender written notice of Mezzanine Lender's intention to purchase the Senior Loan (the "**Purchase Notice**"), together with a deposit in an amount equal to ten percent (10%) of the Loan Purchase Price (as may be increased in accordance with Section 11(c), the "**Purchase Deposit**"), provided that such right may only be exercised, and such purchase may only be consummated, if (x) no Mezzanine Lender Intercreditor Event of Default exists at the time of such exercise or at the time such purchase is to be consummated, and (y) the Purchase Notice is sent within thirty (30) days after Mezzanine Lender's receipt of the Purchase Option Notice (the "**Notice Period**"). The purchase of the Senior Loan pursuant to such right shall be consummated at a closing at the offices of Senior Lender or its counsel in New York, New York on a date not later than ninety (90) days following Mezzanine Lender's delivery of the Purchase Notice to Senior Lender. At such closing, concurrently with payment to Senior Lender of the Loan Purchase Price, Senior Lender shall deliver or cause to be delivered to Mezzanine Lender all Senior Loan Documents and all amounts then held in any reserve or escrow account controlled by or held on account of the Senior Lender, and Senior Lender shall execute in favor of Mezzanine Lender or its designee assignment documentation, in form and substance reasonably acceptable to Mezzanine Lender and Senior Lender, at the sole cost and expense of Mezzanine Lender, to assign the Senior Loan and Senior Lender's rights under the Senior Loan Documents (without recourse, representations or warranties, except for representations as to the outstanding balance of the Senior Loan, representations that except for the Senior Loan Documents delivered to Mezzanine Lender, the Senior Loan has not been modified or amended, and representations from Senior Lender that it is the legal and beneficial owner of the entire Senior Loan (or if there is more than one Senior Lender, the portion of the Senior Loan being transferred by such Senior Lender) and

that the Senior Loan will be free and clear of any lien, security interest, option or other charge or encumbrance upon the closing of the purchase of the Senior Loan).

The term "Purchase Option Event" is defined in the ICA as follows:

"**Purchase Option Event**" means any of the following: (i) Borrower has become a debtor in any Proceeding; (ii) the Senior Loan has been accelerated, (iii) any Enforcement Action described in clause (i) or (ii) of such definition has been commenced with respect to the Senior Loan, and/or (iv) any Senior Loan Event of Default with respect to a monetary Event of Default or a non-monetary Event of Default exists and is continuing for a period of at least ninety (90) days (subject to the provisions of Section 10 hereof).

In turn, an "Enforcement Action" means as follows:

(i) judicial or non-judicial foreclosure proceeding, the exercise of any power of sale, the obtaining of a receiver or the taking of any other enforcement action against the Premises or any portion thereof or Borrower, including, without limitation, the taking of possession or control of the Premises or any portion thereof, (ii) acceleration of, or demand or action taken in order to collect, all or any indebtedness secured by all or any portion of the Premises (other than giving of notices of default and statements of overdue amounts) or (iii) exercise of any right or remedy available to Senior Lender under the Senior Loan Documents, at law, in equity or otherwise with respect to Borrower and/or any portion of the Premises; provided, however, that, in no event shall the giving of notices of default, the giving of statements of overdue amounts, the giving of notices of Senior Lender's reservation of rights, and/or the exercise of any of Senior Lender's rights or remedies with respect to the Lease Purchase Option be an Enforcement Action.

On or about July 16, 2020, Original Lender sent to Mezzanine Lender a notice to cure in accordance with Section 10(a) of the ICA stating, among other things, that "Borrower (1) has failed to pay the scheduled Monthly Payments . . . of interest due on the Payment Dates . . . occurring on March 1, 2020, April 1, 2020, May 1, 2020, June 1, 2020, and July 1, 2020 . . . and (2) has failed to pay real estate taxes due and payable with respect to the Premises as of January 2020 and July 2020."  Notwithstanding that the foregoing payment defaults qualified as a Purchase Option Event under clause (iv) of such defined term in the ICA, Original Lender never issued a Purchase Option Notice under Section 11(a) of the ICA with respect to such payment defaults.

On or about August 20, 2020, Original Lender commenced a mortgage foreclosure

action in New York state court.  Notwithstanding that such mortgage enforcement action qualified as an Enforcement Action and, thus, as a Purchase Option Event under clause (iii) of the definition of Purchase Option Event in the ICA, Original Lender never issued a Purchase Option Notice under Section 11(a) of the ICA with respect to such Enforcement Action.

On or about December 18, 2020, the Debtors filed with this Court voluntary petitions for bankruptcy relief.  Notwithstanding that the commencement of the Debtors' bankruptcy cases qualified as a Purchase Option Event under clause (i) of that defined term in the ICA, Original Lender never issued a Purchase Option Notice under Section 11(a) of the ICA with respect to such bankruptcy filing.

**The Bankruptcy and Ensuing Adversary Proceeding**

In bankruptcy, Mezzanine Lender filed its own proof of claim and proceeding in harmony with the Original Lender in seeking a restructuring from the Debtors that recognized both the senior and mezzanine debt.  This all changed when the Original Lender sold and assigned the senior mortgage debt to TH Holdco (while financing a large part of the purchase price).  Within a short period thereafter, TH Holdco filed a liquidating plan and attempted to use the ICA as a sword to eviscerate all of Mezzanine Lender's claims and interests in bankruptcy

With this sudden change in position, Mezzanine Lender responded by commencing the Adversary Proceeding to enforce purchase option rights as of July 2020 consistent with the no waiver provision of the ICA, specifically, Section 23, which provides:

> No failure on the part of Mezzanine Lender and Senior Lender to exercise, and no delay in exercising, any right hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any right hereunder preclude any other or further exercise thereof or the exercise of any other right.  The remedies herein provided are cumulative and not exclusive of any remedies provided by law.

Although the ICA heavily favored Original Lender, it also provided to Mezzanine Lender several critically important rights and remedies to protect itself.  At issue here is Original Lender's affirmative and mandatory obligation to provide Mezzanine Lender with a Purchase Option Notice and an opportunity to purchase the Senior Loan upon the occurrence of certain events.  (*See* JA-000542-000545.)

On at least three separate occasions—July 16, 2020, August 20, 2020, and December 18, 2020—a Purchase Option Event, as defined in the ICA, occurred, but Original Lender failed to provide Mezzanine Lender with the required Purchase Option Notice in each instance.  (*See* JA-000491-000504.)  Notably, TH Holdco purchased the Senior Loan subject to the ICA and Mezzanine Lender's rights and remedies thereunder.  Whereas Original Lender and Mezzanine Lender had been in lockstep and working cooperatively with respect to their respective loans and collateral, Original Lender's sale and assignment to TH Holdco, fundamentally altered the then existing dynamic.

On February 20, 2022, TH Holdco filed a creditor's plan of liquidation providing for the sale of the Property that anticipated Mezzanine Lender would not recover anything on account of its claim against Mezz and its security interest in Mezz's membership interests in Hotel and Residential.  (*See* JA-000151-000189.)  Facing this extremely prejudicial develop and to enforce its rights under the ICA, Mezzanine Lender commenced the Adversary Proceeding against TH Holdco seeking, among other things, declaratory and injunctive relief and to compel specific performance of the ICA.  In particular, Mezzanine Lender has asked the Bankruptcy Court to compel TH Holdco to provide Mezzanine Lender with a Purchase Option Notice and an opportunity to purchase the Senior Loan at a price to be determined by the Bankruptcy Court.  (*See* JA-000491-000504.)

11

Mezzanine Lender requested below that the Bankruptcy Court adjourn its proceedings with respect to confirmation of TH Holdco's Plan or, at a minimum, delay consummation of the Plan and the sale of the Property until after Mezzanine Lender's rights had been adjudicated on the merits in the Adversary Proceeding.  (*See* JA-002880-002891.)  The Bankruptcy Court declined Mezzanine Lender's requests and proceeded, in error, to confirm TH Holdco's Plan over Mezzanine Lender's objections notwithstanding that Mezzanine Lender should have been provided a Purchase Option Notice (or three such notices) and has an enforceable right to purchase the Senior Loan.  (*See* JA-000491-000504.)  Mezzanine Lender also objected to confirmation of TH Holdco's Plan on the grounds that, as alleged in the Adversary Proceeding, Original Lender materially breached the ICA, and that Mezzanine Lender should be provided with a Purchase Option Notice and opportunity to purchase the Senior Loan as of July 2020.  (*See* JA-002880-002891.)  Had Mezzanine Lender been provided with such an opportunity, then TH Holdco would not be a creditor of the Debtors and would have no standing to propose and confirm any bankruptcy plan or  credit bid at a sale of the Property.

Mezzanine Lender further objected to TH Holdco's Plan on the basis that notwithstanding the material breaches of the ICA, TH Holdco nonetheless purported to exercise a right under the ICA entitling TH Holdco to cast a vote in favor of its own Plan on Mezzanine Lender's behalf, a right that ceased to be available to TH Holdco on account of the prior breaches of the ICA.  (*See* JA-002880-002891.)  Mezzanine Lender submitted its own ballot on account of its own claim voting to reject TH Holdco's Plan, but Mezzanine Lender's ballot was not taken into consideration.

During the Confirmation Hearing, the Bankruptcy Court discussed Mezzanine Lender's fallback position regarding a post-sale damages claim.  The Court seemed to suggest that Mezzanine Lender would gain standing to assert objections despite Section 9(d) if the damages

claim was waived.  (*See* JA-003630.)  In response, Mezzanine Lender indicated it was prepared to

do so and limit its rights under Section 31 to equitable remedies, although in the end, this too was

unavailing, leaving Mezzanine Lender with no prospect for recovery absent a reversal on appeal.

## ARGUMENT

### POINT I.

**The Mezzanine Lender's Claims of Breach of the ICA Asserted in the Adversary Proceeding Presented an Important Threshold Issue to be Determined Before the TH Holdco Plan Became Fully Effective**

To put it succinctly, the Bankruptcy Court overread the impact of Section 9(d) of the ICA

and underread the parties' own specific agreement relating to the existence of equitable remedies

under Section 31 of the ICA when it confirmed the TH Holdco Plan without deciding whether TH

Holdco was liable for a breach in the pending Adversary Proceeding.  Indeed, Section 31 of the ICA

provides:

> "[Original] Lender . . . and Mezzanine Lender . . . acknowledge (and waive any defense based on a claim)  that monetary damages are not an adequate remedy to redress a breach by the other party hereunder and that a breach by the [Original] Lender or Mezzanine Lender hereunder would cause irreparable harm to the other party hereunder.  Accordingly, [Original] Lender and Mezzanine Lender agree that . . . the remedies of injunction, declaratory judgment and specific performance shall be available to such non-breaching party,"

The existence of equitable remedies (which correspond to what Mezzanine Lender is seeking in the

Adversary Proceeding) cannot be eliminated from consideration merely because it is inconvenient

to TH Holdco or might delay completion of a sale.  The task presented for this Court on appeal is to

harmonize both of these provisions such that Mezzanine Lender' equitable rights and remedies, as

recognized by the ICA, have real meaning.  It is not enough to keep the Adversary Proceeding

going post-confirmation.  The availability of specific performance and Mezzanine Lender's right to

purchase the Senior Loan must be kept alive as well.  Otherwise, the right to a Purchase Option

Notice in Section 11 of the ICA and the availability of specific performance in Section 31 are

rendered entirely illusory and and effectively eliminated from the ICA in contravention of the well-settled canon of construction that "no provisions of a contract should be left without force and effect." *Muzak Corp. v. Hotel Taft Corp.*, 1 N.Y.2d 42, 46 (1956); *see also, Cornhill Corp. v. S.S. Plants, Inc.*, 9 N.Y.2d 595, 599 (1961) ("[W]ere we to sustain defendant's interpretation of this [contract] [an] express provision . . . would be rendered entirely meaningless, and this we may not do.").

If the Confirmation Order holds without a determination of TH Holdco's breach, then Mezzanine Lender's bargained-for rights under Sections 11 and 31 become a nullity.  While TH Holdco may ultimately argue that the breach was not material or Mezzanine Lender could not perform, it has not and cannot argue that purchase option notices were actually given, so the breach is readily apparent.  Furthermore, Mezzanine Lender had a reasonable and enforceable expectation that it would be given notice and an opportunity to purchase the Senior Loan.  Indeed, this is perhaps the most critical right for Mezzanine Lender in the ICA.  As things stand, TH Holdco argues that Section 9(d) precludes an adverse effect *other than* an extension of time in which to issue a Purchase Option Notice, but it is undisputed that no Purchase Option Notice has ever been issued, and TH Holdco's position ignores the plain fact that an exercise of the purchase option and payment by Mezzanine Lender for the Senior Loan would not constitute an "adverse effect" at all.  Rather, it would give Original Lender, and now TH Holdco, exactly what it had bargained for in the ICA.

At this point, it is only fitting to give Mezzanine Lender a reasonable opportunity to obtain a ruling in the Adversary Proceeding, particularly since the provisions of the ICA themselves are not an absolute bar and, in fact, contain an important proviso that Mezzanine Lender is not precluded from taking actions to protect its own collateral position.  (No action against borrowers [not TH

Holdco] "except to the extent necessary to preserve or realized upon Mezzanine Lender's interest in the Equity Collateral . . . ").

At any rate, no-action clauses such as Section 9(d) are "strictly construed." *Teachers Ins. And Annuity Ass'n of Am. v. CRIMI MAE Servs. Ltd. P'ship*, 481 Fed. App'x 686, 687 (2d Cir. 2012). Here, nowhere in the express terms of Section 9(d) is Mezzanine Lender prohibited from filing an action based on the Original Lender's breaches,  In particular, none of the specific provisions in Section 9(d) reference Mezzanine Lender's enforcement of its rights pursuant to Sections 11(a) and 31 of the ICA.  In fact, those provisions primarily prohibit Mezzanine Lender form instituting actions against the Debtors, and none of the language prohibits Mezzanine Lender from commencing an action against TH Holdco (or its predecessor) on account of breaches of the ICA.  That subject is reserved for and set forth in Section 31 of the ICA, which should be given effect on appeal.

## POINT II.

### The Bankruptcy Court Erred In Overruling Mezzanine Lender's Objections And Entering The Confirmation Order Without Finally Adjudicating Mezzanine Lender's Adversary Proceeding.

The Bankruptcy Court's entry of the Confirmation Order without adjudicating Mezzanine Lender's Adversary Proceeding constitutes reversible error.  As Mezzanine Lender argued below, based on Mezzanine Lender's exclusive right to a Purchase Option Notice and opportunity to purchase the Senior Loan pursuant to the express terms of the ICA, TH Holdco should not have been permitted to propose and confirm its Plan without an adjudication on the merits of whether Mezzanine Lender or TH Holdo is the rightful owner of the Senior Loan.  This paramount question regarding TH Holdco's standing necessarily is and should have been a threshold obstacle to confirming TH Holdco's Plan, as Mezzanine Lender's purchase of the Senior Loan would entitle Mezzanine Lender, to the exclusion of TH Holdco, to participate in the Debtors' bankruptcy cases

15

as the sole secured lender in the cases.  By confirming TH Holdco's Plan without adjudicating the Adversary Proceeding, the Bankruptcy Court has erroneously permitted TH Holdco to usurp Mezzanine Lender's rights.

At a hearing on April 6, 2022, the Bankruptcy Court addressed the Adversary Proceeding by correctly acknowledging that "it's possible that there's a violation of the [ICA] agreement." (JA-001029.)  The Bankruptcy Court also noted that the allegations in the Adversary Proceeding center around "an assertion that their rights arising from an alleged breach of the intercreditor-agreement's provisions that give, under certain circumstances, a purchase option to the MEZZ Lender.  And that may or may not have a bearing on the credit bid right."  (JA-000992.)  The Bankruptcy Court similarly remarked during the confirmation hearing on June 30, 2022, that Mezzanine Lender has "rights.  They can assert a claim as they have against the senior lender, and they might have a remedy for that."  (JA-003669.)

Notwithstanding these comments, however, the Bankruptcy Court declined Mezzanine Lender's requests to adjourn the plan confirmation hearing or holding the contemplated sale of the Property in abeyance pending resolution of the Adversary Proceeding.  According to the Bankruptcy Court, "[W]hat I'm having a hard time seeing is how resolution of that claim is a gating item for proceeding with TH Holdco's proposed plan."  (JA-000986.)  Mezzanine Lender explained, in response, that "a resolution of the adversary proceeding is a gating issue, because it goes to who may file a plan under Section 1121 of the Bankruptcy Code."  (JA-000987.)

Bankruptcy Code Section 1121 provides that "any party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may file a plan" after the debtors' exclusivity period to file a plan expires.  11 U.S.C. § 1121(c).  The Bankruptcy Court held that "as far as standing is concerned,

16

today, the senior lender, TH Holdco, has standing, because it's the owner of that claim [arising from the Senior Loan]." (JA-000992.) The converse of the Bankruptcy Court's holding on standing is that TH Holdco would *not* have standing if Mezzanine Lender were provided its opportunity to purchase the Senior Loan, an issue the necessarily should have been adjudicated before the Bankruptcy Court proceeded to enter the Confirmation Order. At present, if the Confirmation Order is permitted to stand, Mezzanine Lender will have been deprived of its purchase option rights under the ICA and have no effective remedy under the terms of that agreement.

In fact, it is a virtual certainty that TH Holdco will argue at a later date that Mezzanine Lender's appeal and its rights have become moot once TH Holdco's Plan is substantially consummated (*i.e.*, the sale of the Property is completed). *See, e.g.*, *Deutsche Bank AG v. Metromedia Fiber Network, Inc. (In re Metromedia Fiber Network, Inc.)*, 416 F.3d 136, 1432 (2d Cir. 2005) (discussing equitable mootness doctrine) (quotation omitted). At present, Mezzanine Lender's rights have been preserved by virtue of the Bankruptcy Court's entry of a stay pending this appeal through October 3, 2022, but should the Confirmation Order not be reversed and the Adversary Proceeding not be fully adjudicated by that date, TH Holdco surely will race forward with a sale of the Property (by credit bid on account of the Senior Loan that should belong to Mezzanine Lender) in order to argue Mezzanine Lender no longer has any remedy on account of the breaches of the ICA.[3]

It is this inevitable and predictable development that makes the Bankruptcy Court's error in proceeding with confirmation of TH Holdco's Plan notwithstanding the pending Adversary Proceeding so significant. Even if Mezzanine Lender is correct and would otherwise prevail in the

---

[3] A further extension of the stay may be requested, either from the Bankruptcy Court or from this Court, should it become necessary.

Adversary Proceeding, Mezzanine Lender may be precluded from obtaining any meaningful relief on account of the Confirmation Order.

## POINT III.

### The Bankruptcy Court Erred By Overruling Mezzanine Lender's Objection To TH Holdco's Invalid Voting Of Mezzanine Lender's Secured Claim.

As noted above, Mezzanine Lender voted, on account of its secured claim, to reject TH Holdco's Plan.  Mezzanine Lender's vote, however, was disregarded.  TH Holdco instead counted in favor of its Plan *TH Holdco's* ballot purportedly cast on Mezzanine Lender's behalf. Although it is true that the ICA provides in Section 9(d) that TH Holdco may vote Mezzanine Lender's secured claim, the preexisting and material breaches of the ICA by Original Lender made it impermissible for TH Holdco to exercise such a right.  Indeed, it is well settled under New York law that "when a party to a contract materially breaches that contract, it cannot then enforce that contract against the non-breaching party."  *Nadeau v. Equity Residential Properties Mgmt. Corp.*, 251 F. Supp. 3d 637, 641 (S.D.N.Y. 2017) (citing *In re Lavigne*, 114 F.3d 379, 387 (2d Cir. 1997)); *Marisa Christina, Inc. v. Freis*, 646 F. Supp. 252, 254 (S.D.N.Y. 1986); *Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.*, 500 F.3d 171, 186 (2d Cir. 2007).

As detailed in the Adversary Proceeding, and not yet adjudicated, Original Lender materially breached the ICA by failing to provide Mezzanine Lender with the required notices of Purchase Option Events.  (*See* JA-000491-000504.)  As such, the Bankruptcy Court should not have permitted TH Holdco to cast a vote on Mezzanine Lender's behalf and in favor of TH Holdco's own Plan pursuant to Section 9(d) of the ICA.  Rather, the Bankruptcy Court should have sustained Mezzanine Lender's objection to TH Holdco's ballot and analyzed whether plan confirmation is appropriate notwithstanding Mezzanine Lender's vote to reject the Plan or, alternatively, adjourned plan confirmation until after resolution of the Adversary Proceeding on the merits.  For multi-debtor

plans, such as the Plan at issue here, at least one impaired class *per debtor* must accept the plan (absent substantive consolidation of the debtors, which did not occur below).  *See, e.g.*, *In re Tribune Co.*, 464 B.R. 126, 182-83 (Bankr. D. Del. 2011); *In re Jer/Jameson Mezz Borrower II, LLC*, 461 B.R. 293, 302 (Bankr. D. Del. 2011).  Here, in light of Mezzanine Lender's vote to reject TH Holdco's Plan, no impaired class voted to accept TH Holdco's Plan with respect to Mezz, and the Bankruptcy Court's decision to confirm the Plan was in error.

## **CONCLUSION**

The Bankruptcy Court's Confirmation Order should be reversed and remanded with instructions that the Bankruptcy Court first determine partial summary judgment as to whether there was a breach of the ICA, and if so, whether Mezzanine Lender is entitled to exercise its option to purchase the Senior Loan, and if so, at what price, prior to the TH Holdco's Plan becoming effective.

Dated: August 23, 2022

SEYFARTH SHAW LLP

By: __/s/ *M. Ryan Pinkston*_____

       M. Ryan Pinkston (*pro hac vice*)
       SEYFARTH SHAW LLP
       560 Mission Street, Suite 3100
       San Francisco, California 94105
       Telephone:  (415) 544-1013
       Facsimile:  (415) 397-8549
       Email:  rpinkston@seyfarth.com

GOLDBERG WEPRIN FINKEL
GOLDSTEIN LLP

By:  /s/ Kevin J. Nash_____

       1501 Broadway, 22nd Floor
       New York, New York 10036
       Telephone : (212) 221-5700
       Facsimile: (212) 221-6532
       Email: kjnash@gwulaw.com

*Attorneys for 85 Flatbush Mezz LLC*

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Federal Rule of Bankruptcy Procedure 8015(a)(7)(C), I certify that the foregoing opening brief complies with the type-volume limitation set forth in Federal Rule of Bankruptcy Procedure 8015(a)(7)(B), made applicable in this appeal by Federal Rule of Bankruptcy Procedure 8016(d), and contains 6,046 words (as counted by Microsoft Word), exclusive of the corporate disclosure statement, table of contents, table of authorities, and this certificate of compliance.

Dated: August 23, 2022
      San Francisco, California
                                       /s/ *M. Ryan Pinkston*

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 23, 2022, I caused a true and correct copy of the foregoing

**Appellant 85 Flatbush Mezz LLC's Opening Brief** to be served via the Court's CM/ECF system

on all parties registered to receive electronic notice in this case.


                                        */s/ M. Ryan Pinkston*

86204719v.1