Case No. 7:22-cv-06233-CS

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

*In re:*

85 FLATBUSH RHO MEZZ LLC, 85 FLATBUSH RHO HOTEL LLC,
85 FLATBUSH RHO RESIDENTIAL LLC,

Debtors.

---

85 FLATBUSH MEZZ LLC,

Appellant,

v.

TH HOLDCO LLC,

Appellee.

---

Appeal from the United States Bankruptcy Court for the
Southern District of New York, Bankr. Case No. 20-23280 (SHL)

---

**BRIEF OF APPELLEE TH HOLDCO, LLC IN OPPOSITION TO**
**BRIEF OF APPELLANT 85 FLATBUSH MEZZ LLC**

---

## CORPORATE DISCLOSURE STATEMENT

Appellee TH Holdco, LLC ("TH Holdco" or "Appellee") is owned 100% by TH Pledgor LLC, a Delaware limited liability company.  Appellee is ultimately indirectly owned by certain Ohana related funds which are privately held and not publicly traded.  OREI Long Term Equity Fund UGP LLC, a Delaware limited liability company, acts as the ultimate general partner, and the funds are managed by an Ohana affiliated entity, OREI Advisors LP, a Delaware limited partnership.

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. v

PRELIMINARY STATEMENT ............................................................. 1

STATEMENT OF APPELLATE JURISDICTION ................................. 5

STATEMENT OF ISSUES PRESENTED AND STANDARD OF REVIEW ........................... 6

STATEMENT OF CASE AND RELEVANT FACTS ...................................................... 6

    A.    The Senior Loan Documents & The ICA .............................................. 6

    B.    TH Holdco's Plan, Mezzanine Lender's Objections and the Adversary Proceeding ............................................................................................... 11

    C.    The Bankruptcy Court Hearings ........................................................ 15

ARGUMENT ........................................................................................ 17

I.    THE BANKRUPTCY COURT CORRECTLY OVERRULED MEZZANINE LENDER'S OBJECTION TO PLAN CONFIRMATION PRIOR TO A FINAL ADJUDICATION OF THE ADVERSARY PROCEEDING BASED ON SECTION 9(d) OF THE ICA ............................................................................................. 17

    A.    Section 9(d) of the ICA is Enforceable and Applies to Bar Mezzanine Lender's Adversary Proceeding and the Confirmation Objection ...................................... 17

        i.    The Adversary Proceeding and Confirmation Objection Fall Within the Ambit of Section 9(d) ................................................................. 19

        ii.    The Carve-Out in Section 9(d) Does Not Apply to the Adversary Proceeding or the Confirmation Objection ............................................. 20

        iii.    Section 31 of the ICA Does Not Allow Mezzanine Lender to Maintain the Adversary Proceeding .......................................................... 21

    B.    Mezzanine Lender Has Failed to Establish Any Basis to Relieve it of the Restrictions in Section 9(d) ............................................................ 24

        i.    Pursuant to the Terms of the ICA, Mezzanine Lender Cannot Escape Enforcement of Section 9(d) .......................................................... 24

        ii.    Original Senior Lender's Alleged Breach of the ICA, Even if Proven, Does Not Excuse Mezzanine Lender's Compliance with Section 9(d) .... 26

        iii.    Mezzanine Lender Cannot Seek to Enforce the ICA and Simultaneously Contend That it is not Bound by Section 9(d) Thereof ............................. 29

    C.    Resolution of the Adversary Proceeding is Not a Threshold Issue for Confirmation of TH Holdco's Plan ....................................................... 30

II.      THE BANKRUPTCY COURT CORRECTLY OVERRULED MEZZANINE
         LENDER'S OBJECTION TO TH HOLDCO'S VOTING OF MEZZANINE LENDER'S
         SECURED CLAIM IN ACCORDANCE WITH TH HOLDCO'S RIGHTS UNDER
         SECTION 9(d) OF THE ICA. ......................................................................................... 34

         A.      Section 9(d) Expressly Permits TH Holdco to Vote Mezzanine Lender's Claim
                 and the Bankruptcy Court Correctly Overruled Mezzanine Lender's Objection to
                 the Contrary .......................................................................................................... 34

         B.      Whether Class 11 Votes For or Against the Plan is Immaterial Given the *Charter
                 Communications* and *Transwest Properties* Decisions Followed by the
                 Bankruptcy Court .................................................................................................. 36

         C.      The Plan is a Separate Plan for Each of the Three Bankruptcy Estates and Was
                 Confirmed as to the Hotel and Residential Estates Even if Class 11 Voted Against
                 the Plan in the Mezz Estate and Mezzanine Lender Has No Standing Against the
                 Hotel Estate or the Residential Estate ................................................................... 37

CONCLUSION ...................................................................................................................... 39

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Am. Rds. LLC*,
  496 B.R. 727 (Bankr. S.D.N.Y. 2013) ..............................................................17, 18

*Callanan v. Keeseville, Ausable Chasm & Lake Champlain R.R. Co.*,
  199 N.Y. 268 (N.Y. 1910) .............................................................................27

*In re Charter Commc'ns, Inc.*,
  691 F.3d 476 (2d Cir. 2012)...........................................................................2, 36

*In re CIT Grp. Inc.*,
  No. 09-16565 (ALG), 2009 WL 4824498 (Bankr. S.D.N.Y. Dec. 8, 2009) .........................38

*In re Coastal Broadcasting Systems, Inc.*,
  2013 WL 3285936 (D.N.J. 2013), aff'd, 570 Fed. Appx. 188 (3d Cir. 2014)......................34

*Frank Felix Assocs. v. Austin Drugs*,
  111 F.3d 284 (2d Cir. 1997)......................................................................27, 28, 29

*In re GGM. P.C.*,
  165 F.3d 1026 (5th Cir. 1999) ........................................................................37

*God's Battalion of Prayer Pentecostal Church, Inc. v. Miele Assocs., LLP*,
  6 N.Y.3d 371 (2006) ...................................................................................29

*In re Innkeepers USA Tr.*,
  448 B.R. 131 (Bankr. S.D.N.Y. 2011).............................................................18, 19

*Intrepid Invs., LLC v. Selling Source, LLC*,
  165 A.D.3d 523 (1st Dep't 2018) .....................................................................26

*Ion Media Networks, Inc. v. Cyrus Select Opportunities Master Fund, Ltd. (In re
  Ion Media Networks, Inc.)*,
  419 B.R. 585 (Bankr. S.D.N.Y. 2009) .............................................................18, 34

*Mastrobuono v. Shearson Lehman Hutton, Inc.*,
  514 U.S. 52 (1995).....................................................................................22

*Medical Malpractice Ins. Ass'n v. Hirsch (In re Lavigne)*,
  114 F.3d 379 (2d Cir. 1997).............................................................................27

*In re Melinta Therapeutics, Inc.*,
  623 B.R. 257 (Bankr. D. Del. 2020) ...................................................................38

*Merrill Lynch & Co. v. Allegheny Energy, Inc.*,
   500 F.3d 171 (2d Cir. 2007)...................................................................................35

*Midtown West Portfolio Lender LLC v. CMTG Lender 23 LLC*,
   Index No. 656589/2021 (Sup. Ct. N.Y. Cty. Nov. 19, 2021) ...................................22

*Mizuho Corp. Bank, Ltd. v. Enron Corp. (In re Enron Corp.)*,
   302 B.R. 463 (Bankr. S.D.N.Y. 2003)....................................................................18

*Nadeau v. Equity Residential Properties Management Corp.*,
   251 F. Supp. 3d 637 (S.D.N.Y. 2017)......................................................................35

*Pavarini McGovern, LLC v. Waterscape Resort LLC (In re Waterscape Resort
   LLC)*,
   514 B.R. 384 (Bankr. S.D.N.Y. 2014)....................................................................29

*Portelos v. Hill*,
   719 F. App'x 37 (2d Cir. 2017) (Fed. R. App. P. 3) ...............................................36

*Rosoff Bros. v. State*,
   39 A.D.2d 974 (3d Dep't 1972) ..............................................................................23

*In re Sabine Oil & Gas Corp.*,
   No. 15-11835 (SCC), 2016 WL 11565432 (Bankr. S.D.N.Y. July 27, 2016) ........38

*Sofi Classic S.A. de C.V. v. Hurowitz*,
   444 F. Supp. 2d 231 (S.D.N.Y. 2006)......................................................................29

*Toshiba Corp. v. Am. Media Int'l, LLC*,
   No. 12 Civ. 800, 2012 WL 3822759 (S.D.N.Y. Sept. 4, 2012)..............................28

*In re Trans. World Airlines, Inc.*,
   145 F.3d 124 (3d Cir. 1998)....................................................................................37

*In re Transwest Properties*,
   881 F.3d 724 (9th Cir. 2018). .................................................................................36

*In re Uni-Rty Corp.*,
   No. 96 CIV. 4573 (DAB), 1998 WL 299941 (S.D.N.Y. June 9, 1998), *aff'd*,
   175 F.3d 1008 (2d Cir. 1999)..................................................................................36

*United States v. Caltabiano*,
   871 F.3d 210 (2d Cir. 2017)....................................................................................37

*Zion v. Kurtz*,
   50 N.Y.2d 92 (N.Y. 1980) ......................................................................................20

**Rules and Statutes**

Fed. R. Bankr. P. 3001 ...................................................................................................32

11 U.S.C. § 510 .............................................................................................................34

11 U.S.C. § 1111(b) .........................................................................................................9

11 U.S.C. § 1125 ............................................................................................................14

11 U.S.C. § 1129(a)(10) .................................................................................................36

11 U.S.C. § 1129(b) .......................................................................................................36

15 U.S.C. § 1 ...................................................................................................................9

15 U.S.C. § 1(a) .......................................................................................................21, 25

15 U.S.C. § 4 .................................................................................................................28

15 U.S.C. § 4(c) ............................................................................................................11

15 U.S.C. § 5 .................................................................................................................28

15 U.S.C. § 6 .................................................................................................................28

15 U.S.C. § 7 .....................................................................................................8, 11, 28

15 U.S.C. § 8 ...........................................................................................................11, 28

15 U.S.C. § 9 ...........................................................................................................14, 15

15 U.S.C. § 9(iii) ......................................................................................................8, 21

15 U.S.C. § 9(d) ..................................................................................................... *passim*

15 U.S.C. § 9(d)(i) .................................................................................................3, 8, 21

15 U.S.C. § 9(d)(ii) ........................................................................................6, 9, 15, 34

15 U.S.C. § 11 .........................................................................................................9, 25

15 U.S.C. § 11(a) ................................................................................................... *passim*

15 U.S.C. § 12 ...............................................................................................................28

15 U.S.C. § 28 .......................................................................................................11, 26

15 U.S.C. § 31 ....................................................................................................... *passim*

15 U.S.C. § 80a-9(d) ...........................................................................................................21, 22

28 U.S.C. § 158(a) ....................................................................................................................1

Appellee TH Holdco respectfully submits this brief in opposition to Appellant 85 Flatbush Mezz LLC's ("Mezzanine Lender" or "Appellant") appeal of the July 6, 2022 *Findings of Fact, Conclusions of Law, and Order Confirming TH Holdco LLC's Second Amended Chapter 11 Plan, as Modified by this Order* (the "Confirmation Order"; JA-003478-003601) entered by the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), and respectfully requests the United States District Court for the Southern District of New York (this "Court") affirm the Confirmation Order

## PRELIMINARY STATEMENT

Mezzanine Lender's tactics throughout these bankruptcy proceedings — including filing the adversary proceeding against TH Holdco (the "Adversary Proceeding," Adv. Proc. No. 22-07022; JA-00491-00571), objecting to confirmation of the Plan based on the Adversary Proceeding (the "Confirmation Objection," Dkt. 227; JA-002880-002891), and, most recently, pursuing this Appeal — are a transparent attempt by Mezzanine Lender to extract hold-up value from its otherwise out of the money position.

Relying on the intercreditor agreement between Mezzanine Lender and TH Holdco (the "ICA," Case No. 22-07022, Dkt. 16; THS000638-000851), Mezzanine Lender conjured up meritless claims which it asserted in the Adversary Proceeding on the eve of the deadline for objecting to TH Holdco's Plan.  And, based on those claims, Mezzanine Lender has sought to impede and delay confirmation of the Plan, and vote its own claim in the above-captioned Chapter 11 cases (the "Bankruptcy Proceedings") in opposition to TH Holdco's Plan (despite the ICA providing TH Holdco with an irrevocable power of attorney).  Mezzanine Lender's conduct violates the plain terms of the no-action clause in the ICA, which explicitly prohibits Mezzanine Lender from engaging in this type of obstructionist behavior.  Judge Drain sought to put an end to

Mezzanine Lender's repeated, deliberate disregard of the ICA and, for the reasons stated herein, this Court should affirm Judge Drain's rulings.

According to Mezzanine Lender, the "overriding question for appeal . . . is whether Mezzanine Lender retained any rights to contest confirmation of TH Holdco's Plan based upon the Adversary Proceeding . . . ." Opening Br. at 2.  The short answer is that it did not.

There can be no real dispute that Mezzanine Lender filed the Adversary Proceeding and Confirmation Objection in contravention of Section 9(d), the no-action clause in the ICA, pursuant to which Mezzanine Lender waived certain of its rights in a bankruptcy.  The ICA explicitly forbids Mezzanine Lender from commencing any action in a bankruptcy proceeding by the Debtors, or from taking any other action that is adverse to TH Holdco's enforcement of its claim. ICA § 9(d)(i).  This unequivocal prohibition, of the sort that courts routinely enforce, bars the commencement and prosecution of the Adversary Proceeding, the Confirmation Objection, and Mezzanine Lender's attempted vote against the Plan.  At the June 30, 2022 hearing on confirmation of the Plan (the "Confirmation Hearing"), Judge Drain recognized that the restrictions in Section 9(d) constrained Mezzanine Lender's conduct in the Bankruptcy Proceedings, held that the resolution of the Adversary Proceeding was not a gating issue to confirmation of the Plan, and overruled Mezzanine Lender's Confirmation Objection.

Desperate to evade the outcome-determinative implications of Section 9(d), Mezzanine Lender singularly focuses its appeal on arguing that Section 9(d) does not apply here, and that Judge Drain committed legal error in holding Mezzanine Lender, a sophisticated party, to the terms to which it agreed.  However, none of Mezzanine Lender's arguments pass muster.

First, Mezzanine Lender argues that, because it has sought specific performance in accordance with Section 31 of the ICA, Section 9(d) does not apply.  However, Section 31, a

general provision regarding available remedies, does not speak to the forum in which those available remedies may be pursued.   By contrast, as noted above, Section 9(d) specifically prohibits certain conduct by Mezzanine Lender in the context of a Borrower Bankruptcy.   These two provisions of the ICA can, and should, be read together — as Judge Drain did in the Confirmation Order — to give effect to each, thereby permitting Mezzanine Lender to seek the remedies provided for in Section 31 *to the extent that* the pursuit of such remedies does not contravene the restrictions in Section 9(d).   Further, in Section 31, Mezzanine Lender specifically waived its right to seek its otherwise available remedies in circumstances such as those presented here.   As such, Mezzanine Lender's contention that the Confirmation Order effectively eliminates its rights under Section 31 is plainly wrong.

Second, Mezzanine Lender argues that it is relieved of its obligation to comply with Section 9(d) because, as alleged in the Adversary Proceeding, Original Senior Lender breached the ICA by failing to provide Purchase Option Notices to Mezzanine Lender.   But that argument is fatally flawed for several reasons, including because the ICA expressly provides that any failure to provide a Purchase Option Notice *shall have no adverse effect on Senior Lender* other than an extension of the time within which Mezzanine Lender may exercise the Loan Purchase Option. Further, only a material breach of the ICA that frustrates its very purpose would entitle Mezzanine Lender to disregard its obligations under Section 9(d). As Judge Drain correctly held, any failure to comply with the requirement to notify Mezzanine Lender of a Purchase Option Event is, as a matter of law, not such a material breach.   Confirmation Hr'g Tr.; JA-003644 (41:10-22).   Finally, having sought to enforce the ICA through the Adversary Proceeding, Mezzanine Lender cannot selectively disclaim its obligations under that same agreement.   Because none of Mezzanine Lender's arguments holds water, Section 9(d) should be enforced as written.

Mezzanine Lender also contends that Judge Drain committed legal error by holding that resolution of the Adversary Proceeding was not a threshold issue for confirmation of the Plan because the Adversary Proceeding purportedly will determine who is the "rightful owner of the Senior Loan."   Opening Br. at 16.   The premise of this argument is erroneous because the Adversary Proceeding, which seeks specific performance of the obligation to provide a Purchase Option Notice, will not determine the holder of the Senior Loan.   Moreover, Judge Drain (again) correctly interpreted and enforced Section 9(d).

Specifically, citing the unambiguous prohibitions in Section 9(d), Judge Drain did not "see[] how resolution of that claim is a gating item for proceeding with TH Holdco's proposed plan."   Apr. 6 Hr'g Tr.; JA-000987-000988 (10:22-11:18).   That conclusion was correct because Mezzanine Lender is precluded from bringing the Adversary Proceeding under the restrictions in Section 9(d), and it would thus defy logic to conclude that a resolution of that proceeding is a threshold issue that must be resolved before confirmation of the Plan.   Further, even if Mezzanine Lender could maintain the Adversary Proceeding, its resolution should not be a "gating item" because, contrary to Mezzanine Lender's misleading narrative, the causal relation between a favorable outcome in the Adversary Proceeding to both the holder of the Senior Loan and Plan confirmation is both hypothetical and attenuated.   If Mezzanine Lender were to prevail, the sole remedy to which it would be entitled is the issuance of a Purchase Option Notice, not the automatic ability to become the senior claimholder and propose an alternative confirmation plan.[1]   There is no reason to delay Plan confirmation for months on end, to the detriment of TH Holdco, on the

---

[1]       Mezzanine Lender could have filed an alternative plan in its capacity as mezzanine lender (subject to the terms of the ICA) at any time since exclusivity expired on January 24, 2022, but it has not done so.

basis of speculative events that almost certainly will not come to pass, particularly where, as here, Mezzanine Lender has not been diligent in prosecuting its claims.

Finally, Mezzanine Lender contends that Judge Drain erred in permitting TH Holdco to vote Mezzanine Lender's secured claims on its behalf. But the only basis for Mezzanine Lender's argument is its meritless contention (discussed above) that Section 9(d) should not apply. Specifically, Section 9(d)(ii) of the ICA grants Senior Lender an irrevocable power of attorney to "vote in any [Borrower Bankruptcy] any and all claims of Mezzanine Lender . . . in connection with any such proceeding, including without limitation, the right to . . . vote to accept or reject a plan," (THS000676-000677; ICA § 9(d)(ii)) and TH Holdco did just that. Accordingly, Judge Drain correctly found that TH Holdco was entitled to vote in favor of the Plan on Mezzanine Lender's behalf.

In sum, none of the arguments raised by Mezzanine Lender in this Appeal withstand scrutiny. Moreover, laid bare, these arguments confirm a pattern of obstructionist conduct undertaken in violation of carefully negotiated contractual provisions, with the sole intent being to extract hold-up value by delaying confirmation of a Plan that was duly considered and properly approved. The Confirmation Order should be affirmed.

## STATEMENT OF APPELLATE JURISDICTION

Appellee does not dispute the statements in Appellant's Opening Brief that (i) the Bankruptcy Court had jurisdiction to confirm the *Second Amended Chapter 11 Plan* proposed by TH Holdco (the "Plan"; JA-002452-002493)[2]; (ii) the Confirmation Order (JA-003478-003601) is

---

[2]    Unless otherwise stated, all internal citations and quotations are omitted, and all alterations, ellipses, and emphasis are added. Capitalized terms used but not otherwise defined in this Response Brief shall have the meaning set forth in the Plan or, if not therein, the ICA (defined herein). Citations to "Opening Brief" or "Opening Br." refer to Appellant 85 Flatbush Mezz LLC's Opening Brief (Dkt. 8).

a final order; (iii) the Confirmation Order is appealable to this Court as of right pursuant to 28 U.S.C. Section 158(a); and (iv) Mezzanine Lender timely filed its notice of appeal on July 20, 2022 (JA-003695-003823).

## STATEMENT OF ISSUES PRESENTED AND STANDARD OF REVIEW

1.      Whether the Bankruptcy Court correctly overruled Mezzanine Lender's objection and confirmed TH Holdco's plan despite the pendency of the Adversary Proceeding (defined below), based on Section 9(d) of the ICA (defined below), which, among other things, precludes Mezzanine Lender from commencing any action in connection with a Borrower Bankruptcy (defined below).  Appellee agrees that the interpretation of the relevant provisions of the ICA is a legal question that is reviewed *de novo*.  *See In re Charter Commc'ns, Inc*., 691 F.3d 476, 482-83 (2d Cir. 2012).

2.      Whether the Bankruptcy Court correctly overruled Mezzanine Lender's objection to TH Holdco voting Mezzanine Lender's secured claim on behalf of Mezzanine Lender pursuant to Section 9(d) of the ICA which, among other things, irrevocably authorizes TH Holdco to vote Mezzanine Lender's claim.  This legal question is reviewed de novo.  *See Charter Commc'ns*, 691 F.3d at 482-83.

## STATEMENT OF CASE AND RELEVANT FACTS

### A.      The Senior Loan Documents & The ICA

85 Flatbush RHO Mezz LLC (the "Mezzanine Debtor") is the 100% owner of 85 Flatbush RHO Hotel LLC (the "Hotel Debtor") and 85 Flatbush RHO Residential LLC (the "Residential Debtor").  Dkt. 152; JA-000197.  The property is located at 85 Flatbush Extension, Brooklyn, New York (the "Property").  Id.  The Property is a 132,641 square foot, twelve-story, mixed-use property consisting of a 174-room boutique hotel on the first six (6) floors known as the Tillary

6

Hotel Brooklyn, a 58,652 square foot 64-unit luxury multi-family building and a 5,642 square foot parking garage (together, the "Hotel Property").  Id.  The residential component of the Property has nine (9) studios, twenty-six (26) one-bedroom units, and twenty-nine (29) two-bedroom units (together, the "Residential Property").  Id.

The Property was acquired on September 19, 2019.  Id. at JA-000195.  The original senior lender, 85 Flatbush Avenue 1, LLC ("Original Senior Lender"), through an assignment of mortgage from CMTG JP Finance, extended to Hotel Debtor and Residential Debtor a loan in the original principal amount of $57,500,000 plus a new advance in the amount of $12,500,000 for a total principal loan amount of $70,000,000.  Id. at JA-000198.  The loan was evidenced by a consolidated, amended and restated note and consolidated, amended and restated mortgage and security agreement, which was assigned to TH Holdco on January 28, 2022 (the "Mortgage Loan", and the related documents, the "Senior Loan Documents") and is secured by the Hotel Property and the Residential Property.  Id. at JA-000198.  The Mortgage Loan term was for twenty-four (24) months, with a maturity date of October 1, 2021.  Id.  That maturity date has not been extended.  Id.

On September 19, 2019, the Mezzanine Lender advanced a loan to 85 Flatbush RHO Mezz in the original principal amount of $6,000,000 secured by the 85 Flatbush Hotel Pledge Agreement and 85 Flatbush Residential Pledge Agreement.  Id.

Original Senior Lender and Mezzanine Lender entered into the ICA on or about September 19, 2019.  Case No. 22-07022, Dkt. 16; THS000638-000851.  As detailed herein, Original Senior Lender's interest and rights under the ICA are now assigned to TH Holdco.  Dkt. 285; JA-003731.

As Mezzanine Lender acknowledges, the ICA, among other things, reaffirms the superiority of the Senior Loan and subordination of the Mezzanine Loan. *See* Case No. 22-07022; Dkt. 1 at ¶ 9; THS000938-001018 ("[T]he ICA is weighted heavily in favor of the Senior Lenders as the holder of the mortgage loan."); *see also* ICA §§ 7 , THS000672-000673 ("Subordination of Mezzanine Loan and Mezzanine Loan Documents"), 8, THS000673-000675 ("Payment Subordination"), and 9, THS-000675-000677 ("Rights of Subrogation; Bankruptcy"). Certain provisions in the ICA are of particular relevance to this appeal.

Section 9(d) of the ICA, commonly known as a "no-action" clause, contains express and specific waivers of certain of Mezzanine Lender's rights, including its rights to participate in any bankruptcy proceeding in which Mezzanine Lender is deemed to be a creditor of Borrowers (a "Borrower Bankruptcy"). Case No. 22-07022, Dkt. 16; THS000676-000677. Specifically, in any such Borrower Bankruptcy, absent Senior Lender's prior written consent, Mezzanine Lender shall not:

- "make any election, give any consent, **commence any action**, [or] credit bid on all or any portion of the collateral for the Senior Loan";

- "file any motion, claim, obligation, notice or application";

- "**challenge (or join in another party's challenge to) the validity or amount of any claim** submitted in such Proceeding by Senior Lender in good faith or any valuations of . . . any [ ] Senior Loan collateral submitted by Senior Lender in good faith";

- "**take any . . . action . . . which is adverse to Senior Lender's enforcement of its claim** or receipt of adequate protection"; or

- "take any other action . . . ."

*Id.* at THS000676 (ICA § 9(d)(i), (iii)). Section 9(d) further provides that "Senior Lender may vote in any such [Borrower Bankruptcy] any and all claims of Mezzanine Lender, and Mezzanine Lender hereby appoints Senior Lender as its agent, and grants Senior Lender an irrevocable power

of attorney . . . for the purpose of exercising any and all rights and taking any and all actions available to Mezzanine Lender . . . in any [Borrower Bankruptcy], including without limitation, the right to file and/or prosecute any claims, ***to vote or to accept or reject a plan***, or to make any election under Section 1111(b) of the Bankruptcy Code." *Id.* (ICA § 9(d)(ii)).

Section 11 of the ICA, which Mezzanine Lender purportedly seeks to enforce in the Adversary Proceeding, provides that upon the occurrence of certain events, Mezzanine Lender has the option to purchase the entire Senior Loan at a contractually defined Loan Purchase Price, which is to be calculated as of the date of the purchase of the Senior Loan, provided that the conditions set forth in the ICA are met. *Id*. at THS000679-000680 (ICA § 11(a)).

The definition of Loan Purchase Price in the ICA states that it is an "amount determined on the date the Mezzanine Lender purchases the Senior Loan in accordance with Section 11 hereof" and includes "all accrued interest at the Senior Loan Preferred Rate (including default interest . . . [and] all reasonable and actual costs and expenses (including legal fees and expenses) incurred by Senior Lender in enforcing the terms of the Senior Loan Documents." *Id.* at THS000650 (ICA § 1).

Pursuant to the ICA, "[u]pon the occurrence of a Purchase Option Event, Senior Lender shall provide prompt written notice thereof to Mezzanine Lender (a 'Purchase Option Notice') . . . ." *Id.* at THS000679 (ICA § 11(a)).

The ICA is explicit, however, that Mezzanine Lender's right to a Purchase Option Notice "may only be exercised, and such purchase may only be consummated, if (x) no Mezzanine Lender Intercreditor Event of Default exists at the time of such exercise or at the time such purchase is to be consummated." *Id.* at THS000680. The ICA defines a Mezzanine Lender Intercreditor Event of Default to include, among other things (i) Mezzanine Lending being in "material breach of any

9

term, covenant, condition or agreement on its part to be performed or observed and contained in this [ICA]"; and (ii) an act by Mezzanine Lender to "object to, oppose, hinder, contest, interfere with or seek to enjoin or restrain (whether through remedies of injunction, declaratory judgment or specific performance, the filing of a lis pendens, or otherwise) the exercise of rights or remedies by Senior Lender under the Senior Loan Documents while any Senior Event of Default or Continuing Senior Event of Default exists, in any case, except to the extent that the exercise of such rights or remedies are not in accordance with the terms of this [ICA]." *Id.* at THS000650-000651 (definition of "Mezzanine Lender Intercreditor Event of Default").  The ICA also provides for the appropriate remedy should any failure to provide a purchase option notice exist, stating the: "failure of Senior Lender to provide a Purchase [Option] Notice to Mezzanine Lender regarding the occurrence of a Purchase Option Event *shall have no adverse effect on Senior Lender other than the resulting extension of the time in which the Purchase Notice may be given*." *Id.* at THS000680 (ICA § 11(a)).

Section 31 of the ICA, on which Mezzanine Lender heavily relies, addresses the available remedies for a breach of the ICA, and provides that "Senior Lender and Mezzanine Lender agree that upon a breach of this Agreement by Senior Lender, on the one hand, and Mezzanine Lender, on the other hand, the remedies of injunction, declaratory judgment, and specific performance shall be available to the non-breaching party." *Id*. at THS000690.  It also says, however, that "[n]otwithstanding the foregoing, if Senior Lender shall exercise any right or remedy under the Senior Loan Documents that is not in violation of this Agreement, including without limitation, any Enforcement Action, Mezzanine Lender agrees not to object to, oppose, hinder, contest, interfere with or seek to enjoin or restrain any such action (whether through remedies of injunction,

declaratory judgment or specific performance, the filing of a lis pendens, or otherwise) in violation of this Agreement, all of which remedies are hereby waived."  *Id.*

Finally, Section 28 of the ICA states that the ICA is a "continuing agreement" that remains in "full force and effect" unless and until one of the following conditions has been met:  (i) full payment of the Senior Loan; (ii) transfer of the Property via Senior Lender's foreclosure or deed-in-lieu; (iii) Mezzanine Lender's successful completion of an "Equity Collateral Enforcement Action"; or (iv) full satisfaction of the Mezzanine Loan.  *Id.* at THS000689.

In the Opening Brief, Mezzanine Lender complains about the treatment of the Class 11 Claim under the Plan but that treatment is (i) consistent with the fact that the equity interests in the Hotel Debtor and Residential Debtor are only entitled to a recovery in the priority waterfall if there is excess value after paying all creditors against the Hotel Debtor and Residential Debtor in full (including the full Class 3 Claim of TH Holdco including post-petition interest and costs (over $114 million presently) as well as millions of dollars in the tax claims and trade creditors of the Hotel Debtor and the Residential Debtor, *see* Ex. C to the TH Holdco Disclosure Statement [Dkt. 212; JA002604-002607], which is the original priority it agreed to in making the loan to the Mezzanine Debtor, and (ii) required under the ICA, which contractually subordinates the Mezzanine Lender's claims and requires that the full Class 3 Claim of TH Holdco be paid in full including post-petition interests, attorneys' fees, and costs before the Mezzanine Lender gets any recovery.  *See e.g.*, THS000672-000675 (ICA §§ 7, 8).

### B.    TH Holdco's Plan, Mezzanine Lender's Objections and the Adversary Proceeding

Pursuant to Section 4(c) of the ICA, Original Senior Lender had the absolute right to sell the Senior Loan without prior notice to Mezzanine Lender.  THS000663 ("Senior Lender may, from time to time, in its sole and absolute discretion and without any prior notice to Mezzanine

Lender, Transfer all or any portion of the Senior Loan . . . .").  On January 28, 2022, Original Senior Lender exercised that right and sold the Senior Loan to TH Holdco for value.  JA-000711.

On February 20, 2022, TH Holdco filed its first version of a sale plan, entitled *Chapter 11 Plan Filed by Creditor TH Holdco LLC Related to 85 Flatbush RHO Mezz, LLC, 85 Flatbush RHO Hotel LLC, and 85 Flatbush RHO Residential LLC* [Dkt. 151; JA-000151-000189] and the accompanying *Disclosure Statement* [Dkt. 152; JA-000190-000335].

Objections to the Plan were due on March 24, 2022.  JA-000808.  The day before the deadline, March 23, 2022, Mezzanine Lender commenced the Adversary Proceeding and asserted — for the very first time — certain purported rights under the ICA that it alleges accrued almost two years earlier, in ***July of 2020***.  Dkt. 159; Adv. Proc. Dkt. 1; JA-000491-000571. Specifically, in its complaint in the Adversary Proceeding (the "Adversary Complaint"), Mezzanine Lender asserts two causes of action relating to alleged breaches of the ICA.  *Id.*  First, Mezzanine Lender seeks a declaratory judgment that Original Senior Lender and TH Holdco breached the ICA by allegedly failing to issue notices to Mezzanine Lender informing Mezzanine Lender that it was entitled to exercise its right under the ICA to purchase the Senior Loan, and that Mezzanine Lender is now entitled to purchase the loan for the price as it would have been calculated on July 16, 2020.  *Id.* at JA-000494-000495; JA-000501-000503.  Second, Mezzanine Lender seeks an award of specific performance directing TH Holdco to sell and assign the Senior Loan to Mezzanine Lender at the July 16, 2020 price if Mezzanine Lender exercises its purchase option rights.  *Id.* at JA000503-000504.  Notably, Mezzanine Lender does not seek a determination that the January 28, 2022 sale of the Senior Loan was improper or that TH Holdco is not the present holder of the Senior Loan.

The following day, March 24, 2022, Mezzanine Lender filed an objection to TH Holdco's motion to approve its disclosure statement based on the Adversary Proceeding (the "Mezz Objection").   Dkt. 160; JA-000572-000659. Specifically, in the Mezz Objection, Mezzanine Lender asserted that the Plan was "patently unconfirmable" because, among other things, (i) it was "based on the false premise that [TH Holdco's] purchase and assignment of the Senior Loan is not subject to the Mezzanine Lender's purchase option rights"; and (ii) TH Holdco "has no legitimate interest to enforce in the case" because the "rights under the Senior Loan [ ] belong instead to the Mezzanine Lender." *Id.* at JA-000574-000575.

The Adversary Proceeding (as well as the related Mezz Objection and the subsequent actions taken by Mezzanine Lender in these proceedings) are an obvious attempt by Mezzanine Lender to interfere with the confirmation of the Plan and extract hold-up value from Mezzanine Lender's otherwise out of-the-money position.  At no time prior to commencing the Adversary Proceeding did Mezzanine Lender contend, in sum or substance, that it was not provided the relevant notices in accordance with the ICA, that it was entitled to such a notice in accordance with the ICA, or that it wished to exercise the Loan Purchase Option under the ICA.  Indeed, despite having had contemporaneous actual knowledge of all of the events that would have given rise to its right to purchase the Senior Loan (including because it received notice of the borrower's default), Mezzanine Lender waited until the very last moment, after the Plan was submitted and on the eve of the deadline for objections, to assert its purported rights.

On May 26, 2022, TH Holdco filed its *Second Amended Chapter 11 Plan Filed by Creditor TH Holdco LLC Related to 85 Flatbush RHO Mezz, LLC, 85 Flatbush RHO Hotel LLC, and 85 Flatbush RHO Residential LLC* [Dkt. 211; JA-002452-002493] and the accompanying *Second Amended Disclosure Statement* [Dkt. 212; JA-002494-002828] (the "Disclosure Statement").

13

That same day, May 26, 2022, the Bankruptcy Court entered the *Order Granting TH Holdco LLC's Motion to Approve (I) the Adequacy of Information in the Disclosure Statement, (II) Solicitation and Notice Procedures, (III) Forms of Ballots, and (IV) Certain Dates with Respect Thereto*, approving, among other things, the Sale and Bid Procedures for the Properties and the form of Purchase Agreement (the "Disclosure Statement Order") [Dkt. 210; JA-002390-002451].

The Disclosure Statement Order approved the Disclosure Statement as containing adequate information in accordance with § 1125, directed TH Holdco to solicit ballots accepting or rejecting the Plan, set deadlines for the filing of ballots and objections to the Plan, and approved and directed the form and manner of service of notice thereof.  *Id*. at JA-002392-002401.

On June 22, 2022, the Mezz Lender filed its *Objection to Confirmation of Amended Plan* [Dkt. 227; JA-002880-002891].  In the Confirmation Objection, Mezzanine Lender conceded that Section 9(d) creates an issue as to its standing in the Bankruptcy Proceedings.  *See id*. at JA-002882 ("Mezzanine Lender recognizes that the Court must determine whether Mezzanine Lender has standing . . . despite the provisions of Section 9 of the ICA.").  To avoid this issue, Mezzanine Lender argued that Section 9(d) did not apply — and Mezzanine Lender could thus object to confirmation of the Plan and vote to reject the Plan — based on Original Senior Lender's purported breaches of the ICA by failing to provide Purchase Option Notices.  *See id*.  In connection therewith, Mezzanine Lender submitted a ballot purporting to reject the Plan.  Confirmation Hr'g Tr.; JA-003618 (15:22-25).

On June 24, 2022, TH Holdco caused to be filed the TH Holdco LLC's Voting Record Certifying Acceptances and Rejections of TH Holdco LLC's Second Amended Plan [Dkt. 252; JA-003245-003267] (the "Certification of Ballots").  This Certification of Ballots included a copy

of the ballot accepting the Plan on behalf of Class 11 (Mezzanine Lender's class) pursuant to its authority under Section 9(d)(ii) the ICA and a copy of Mezzanine Lender's balloting purporting to reject the Plan.  *Id*. at JA-003258-003267.

### C.    The Bankruptcy Court Hearings

On April 6, 2022, shortly after the commencement of the Adversary Proceeding, Judge Drain held a hearing in connection with these proceedings (the "April 6 Hearing").  Apr. 6, 2022 Hr'g Tr.; JA-000978-001031.  At that hearing, he noted the position asserted by Mezzanine Lender in the Mezz Objection was that "TH Holdco really couldn't go ahead without seeking confirmation of a plan that contemplated a substantial credit bid without resolving that litigation."  *Id*. at JA-000986 (9:4-10).  However, Judge Drain stated that "I have a hard time seeing that, having read the [ICA] and the limitation on the MEZZ Lender's rights under it. . . .  I'm having a hard time seeing how resolution of that claim is a gating item for proceeding with TH Holdco's proposed plan," and he cited the restrictions set forth in Section 9(d) as the basis for his skepticism.  *Id.* at JA-000986-00988  (9:7-10,  17-19;  10:22-11:18);  *see also id.*  at  JA-000988  (11:13-17) ("[Mezzanine Lender's] remedies are limited by the inter-creditor agreement, and more specifically, Section 9.  So, [Mezzanine Lender] may have a monetary claim against TH Holdco that will have to get resolve in some form, but I'm not sure why [the Adversary Proceeding]'s a gate-keeping item.").

At a subsequent hearing on May 16, 2022 (the "May 16 Hearing"), Judge Drain further articulated his rationale, stating that:

> "I don't think the [Adversary Proceeding is] a showstopper to let, from letting the disclosure statement go out or scheduling the confirmation hearing.   Again, because of the inter-creditor agreement's limitations in Section 9 -- what is it 9(d) I think. . . . Yes, 9(d).  I mean, you can't object to their claim [or] challenge the validity of their claim.  So you can't, that's the basis for objecting to

the credit bid is that the claim isn't a claim.  So I think the lawsuit is about money, not about the validity of a claim."

May 16, 2022 Hr'g Tr.; JA-002381 (34:5-15); *see also id*. at JA-002382 (35:4-6, 15-21) ("I'm not prepared to say that confirmation will be delayed until there's a determination in the adversary proceeding. . . . [M]y focus here is less on the merits of the litigation. . . . My focus is on the other provisions of the intercreditor agreement that limit what the Mezz lender can do in a bankruptcy case.").  In light of that conclusion, Judge Drain proceeded with scheduling the Confirmation Hearing for June 30, 2022, prior to resolving the Adversary Proceeding.  JA-002399.  Notably, from the date of the May 16 Hearing to the date of the Confirmation Hearing, Mezzanine Lender took no steps whatsoever to prosecute the Adversary Proceeding.

At the Confirmation Hearing, Judge Drain heard argument on the Confirmation Objection, including extensive discussion regarding Mezzanine Lender's position that Section 9(d) was not enforceable here and did not preclude Mezzanine Lender from objecting to confirmation and voting against the Plan.  Confirmation Hr'g Tr.; JA-003624-003639 (21:2-36:9); JA003643-3644 (40:3-41:24).  Following argument, Judge Drain issued an oral ruling rejecting that argument and finding, instead, that (i) the ICA is binding; (ii) Mezzanine Lender would therefore need to "show that it is relieved under some applicable principle from it"; (iii) Mezzanine Lender had not done so; and (iv) TH Holdco therefore was entitled to vote in favor of the Plan on Mezzanine Lender's behalf.  Confirmation Hr'g Tr.; JA-003640-003642 (37:12-15, 39:13-16).  Mezzanine Lender subsequently appealed the Bankruptcy Court's ruling to this Court.

At the Confirmation Hearing, Judge Drain also confirmed the Plan.  *See id.* at JA003687 (84:12-16).  The Plan provides for the sale of the Property under the Purchase Agreement to (i) TH Holdco for the purchase price consisting of the TH Holdco credit bid; or (ii) in the event that another bidder submits a higher and better bid at the auction which is approved by the Bankruptcy

Court, to the higher bidder for such amount.  JA-002018-002019.  After two months of further marketing, no higher and better bid for the Property was submitted by the bid deadline of July 29, 2022.  Case No. 7:22-cv-06241-CS, Dkt. 9 at 24; Opening Br. at 4.

## ARGUMENT

**I.  THE BANKRUPTCY COURT CORRECTLY OVERRULED MEZZANINE LENDER'S OBJECTION TO PLAN CONFIRMATION PRIOR TO A FINAL ADJUDICATION OF THE ADVERSARY PROCEEDING BASED ON SECTION 9(d) OF THE ICA**

Section 9(d) of the ICA, commonly known as a no-action clause, constrains Mezzanine Lender's actions in connection with any Borrower Bankruptcy.

Among other things, Section 9(d) restricts Mezzanine Lender from: "commenc[ing] *any action* . . . in any [Borrower Bankruptcy] without the prior written consent of Senior Lender" and from "challeng[ing] . . . the validity or amount of *any* claim submitted in such Proceeding by Senior Lender . . . or tak[ing] *any other action* in such Proceeding which is adverse to Senior Lender's enforcement of its claim . . . ."  *Id.* at THS000676-000676.

Because the enforcement of Section 9(d) is dispositive — and dooms Mezzanine Lender's appeal — Mezzanine Lender makes various attempts to circumvent its effect.  None withstands scrutiny.

### A.  Section 9(d) of the ICA is Enforceable and Applies to Bar Mezzanine Lender's Adversary Proceeding and the Confirmation Objection

While Mezzanine Lender complains that it is being held to the terms of Section 9(d) of the ICA, courts regularly enforce such no-action clauses and "have upheld pre-petition inter-creditor agreements waiving a creditor's bankruptcy rights where the creditors are sophisticated parties fully aware of the implications of such a waiver."  *In re Am. Rds. LLC*, 496 B.R. 727, 732 (Bankr. S.D.N.Y. 2013) (collecting cases).  Indeed, "bankruptcy courts have routinely held that a party lacks standing to take an action in bankruptcy in violation of a 'no action' clause" and, accordingly,

have constrained parties' actions on that basis.  *See id.*; *In re Innkeepers USA Tr.*, 448 B.R. 131, 144-45 (Bankr. S.D.N.Y. 2011); *Ion Media Networks, Inc. v. Cyrus Select Opportunities Master Fund, Ltd. (In re Ion Media Networks, Inc.)*, 419 B.R. 585, 597-98 (Bankr. S.D.N.Y. 2009)); *Mizuho Corp. Bank, Ltd. v. Enron Corp. (In re Enron Corp.*), 302 B.R. 463, 477 (Bankr. S.D.N.Y. 2003).

Courts have specifically recognized that the objective of no-action clauses is "to prevent or render moot the very sort of technical argument" that out-of-the-money junior creditors tend to make to extract value from their otherwise valueless positions, and have therefore found that "plainly worded contracts establishing priorities and limiting obstructionist, destabilizing and wasteful behavior should be enforced and creditor expectations should be appropriately fulfilled . . . ."  *In re Ion Media*, 419 B.R. at 594-95.  Indeed, in *Ion Media*, in circumstances strikingly similar to those here, Judge Peck held that a provision in an intercreditor agreement that required the junior lienholder to be silent deprived the junior lienholder of standing to file an objection to a plan.  Judge Peck further chastised the junior lienholder's obstructionist conduct, remarking that "a sophisticated and economically motivated and woefully out of the money creditor has deliberately chosen to ignore the terms of an unambiguous agreement that, read literally, precludes it from opposing confirmation."  *Id.* at 590.  So too here.

Mezzanine Lender is a sophisticated party that knowingly entered into an agreement subordinating its rights, and the language in Section 9(d) that precludes the Adversary Proceeding and the Confirmation Objection is even more explicit in what it prohibits Mezzanine Lender from doing than other no-action clauses that have been enforced.  *See In re Am. Rds.*, 496 B.R. at 730-31 (clause prohibited bondholders from filing objection to bankruptcy plan where it stated that "[b]ondholders cannot institute or direct proceedings with respect to the enforcement of the terms

of the financing documents" and "are precluded from challenging or enforcing the lien" without consent); *In re Innkeepers USA Tr.*, 448 B.R. at 140 n.18, 144-45 (no-action clause that barred a certificate holder from "institut[ing] any suit, action or proceeding in equity or at law upon or under or with respect to this Agreement or any Mortgage Loan" unless certain conditions precedent were satisfied, prevented a certificate holder from objecting to a bid procedures order in a bankruptcy case).

Accordingly, and for the reasons more specifically set forth below, Section 9(d) should be enforced.

### i. The Adversary Proceeding and Confirmation Objection Fall Within the Ambit of Section 9(d)

The general premise of Mezzanine Lender's argument is that, in overruling the Confirmation Objection, Judge Drain "overread the impact of Section 9(d) of the ICA." Opening Br. at 13. Specifically, Mezzanine Lender contends that Section 9(d) does not bar the Adversary Proceeding, or its derivative Confirmation Objection, because "nowhere in the express terms of Section 9(d) is Mezzanine Lender prohibited from filing an action based on the Original Lender's breaches." *Id.* at 16. Mezzanine Lender is wrong.

While Section 9(d) does not generally prohibit Mezzanine Lender from filing an action based on the Original Lender's purported breaches of the ICA, Section 9(d) *does* limit the forum and manner in which Mezzanine Lender can bring such a suit.[3] Section 9(d) explicitly precludes

---

[3]    Mezzanine Lender's claim based on Original Senior Lender's breach of the ICA is contested for several reasons, including because (i) notices were provided to Mezzanine Lender; (ii) Mezzanine Lender was, at all times, aware of the events that gave rise to the purported requirement for Original Lender to issue a Purchase Option Notice; and (iii) Mezzanine Lender was not ready, willing, and able to purchase the Senior Loan at the time that it asserts it would have exercised the purchase option. *See generally* Adv. Pro. Dkt. 6 (Answer) ¶¶ 85-111; THS000927-000930. Indeed, according to Mezzanine Lender, prior to the sale of the Senior Loan to TH Holdco, it was "proceeding in harmony with the Original Lender[,]" Opening Br. at 10, and "Original Lender and Mezzanine Lender has been in lockstep and working cooperatively with

Mezzanine Lender from "commenc[ing] *any action*" or "fil[ing] any motion, claim, obligation, notice or application" in any [Borrower Bankruptcy] without the prior written consent of Senior Lender" and from "challeng[ing] . . . the validity or amount of *any* claim submitted in such Proceeding by Senior Lender . . . or tak[ing] *any other action* in such Proceeding which is adverse to Senior Lender's enforcement of its claim . . . ."  THS000676-000676; *see also Zion v. Kurtz*, 50 N.Y.2d 92, 104 (N.Y. 1980) ("the word 'any' means 'all' or 'every' and imports no limitation").

There can be no genuine dispute that both the Adversary Proceeding and the Confirmation Objection are within the ambit of this specific language.  The Adversary Proceeding and Confirmation Objection both constitute actions and filings in a Borrower Bankruptcy (the Bankruptcy Proceedings) that were filed without the consent of Senior Lender (TH Holdco); by and through the Adversary Proceeding and the Confirmation Objection, Mezzanine Lender challenges the validity of the claim submitted by Senior Lender in a Borrower Bankruptcy; and the Adversary Proceeding and the Confirmation Objection are adverse to Senior Lender's enforcement of its claim.

Thus, the Adversary Proceeding and the Confirmation Objection are expressly precluded by Section 9(d).

### ii.  The Carve-Out in Section 9(d) Does Not Apply to the Adversary Proceeding or the Confirmation Objection

In an attempt to escape the outcome determinative language of Section 9(d), Mezzanine Lender points to a carve-out that allows it to take action "to the extent necessary to preserve or realize upon Mezzanine Lender's interest in the Equity Collateral."  Opening Br. at 14-15. Mezzanine Lender's reliance on this provision is misplaced for several reasons.

─────────────

respect to their respective loans and collateral."  Opening Br. at 11.  That said, *for the purposes of this brief only*, it is assumed that Original Senior Lender breached the ICA by failing to provide a Purchase Option Notice to Mezzanine Lender.

*First*, by its terms, the carve-out does not apply to the Adversary Proceeding or the Confirmation Objection.  The ICA defines "Equity Collateral" as "the equity interests in Borrower pledged pursuant to the Pledge Agreement."  THS000648 (ICA § 1(a), Definition of "Equity Collateral").  Therefore, the carve-out solely relates to preservation of, or realization upon, Mezzanine Lender's interests in the equity interests that the mezzanine borrower pledged to Mezzanine Lender as security for its loan.  Because the Adversary Proceeding and the Confirmation Objection are not actions that Mezzanine Lender is taking to preserve or realize on the equity interests pledged to Mezzanine Lender — rather, they are actions Mezzanine Lender is taking to purportedly enforce its rights under the ICA — they do not fall within the ambit of the carve-out's permitted conduct.

*Second*, even if the carve-out applies, it is only an exemption with respect to subsection (i) of Section 9(d).  *See* THS000676 (ICA § 9(d)(i), (iii)).  There is no such exemption with respect to subsection (iii), which prohibits Mezzanine Lender from challenging the validity of Senior Lender's claim or taking any other action which is adverse to Senior Lender's enforcement of its claim.

As such, in all events, the carve-out in Section 9(d) does not permit Mezzanine Lender to maintain the Adversary Proceeding or assert the Confirmation Objection.

### iii. Section 31 of the ICA Does Not Allow Mezzanine Lender to Maintain the Adversary Proceeding

Mezzanine Lender also attempts to circumvent Section 9(d) based on another provision of the ICA, Section 31, which Mezzanine Lender contends that Judge Drain "underread."  Opening Br. at 13-14.  Again, Mezzanine Lender is wrong.  Judge Drain gave full effect to both Section 9(d) and Section 31 and harmonized the two provisions which, as Mezzanine Lender

admits, is the correct approach.  *Id.* at 13 ("The task presented for this Court on appeal is to harmonize both of these provisions. . . .").

Section 9(d) and Section 31 address two different things.  As set forth above, Section 9(d) specifically prohibits certain conduct by Mezzanine Lender in the context of a Borrower Bankruptcy.  THS000675-000676.  By contrast, Section 31 is a general provision concerning available remedies.  THS000690 ("Senior Lender and Mezzanine Lender agree that upon a breach of this Agreement by Senior Lender, on the one hand, or Mezzanine Lender, on the other hand, the remedies of injunction, declaratory judgment and specific performance shall be available to such non-breaching party.").

Enforcement of Section 9(d) does not, as Mezzanine Lender suggests, conflict with Section 31 or "effectively eliminate[] [Section 31] from the ICA."  Opening Br. at 14.  The two sections can — and should — be read together to allow Mezzanine Lender to seek the remedies provided for in Section 31 to the extent that the pursuit of such remedies does not contravene the restrictions in Section 9(d).  *See, e.g.*, *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 63 (1995) (a contract "should be read to give effect to all its provisions and to render them consistent with each other.").  Mezzanine Lender was (and remains) free to pursue its claim for breach of the ICA, and to seek the equitable relief set forth in Section 31, in another forum at any time, but it is not permitted to do so in the context of the Bankruptcy Proceeding.[4]  The Confirmation Order therefore hardly renders "Mezzanine Lender's bargained-for-rights under Sections 11 and 31 . . . a nullity."  Opening Br. at 14.

---

[4]       Indeed, an affiliate of Mezzanine Lender (represented by the same litigation counsel) recently filed an action to compel the issuance of a purchase option notice in connection with another loan.  *See Midtown West Portfolio Lender LLC v. CMTG Lender 23 LLC*, Index No. 656589/2021 (Sup. Ct. N.Y. Cty. Nov. 19, 2021).

Moreover, Mezzanine Lender's proffered interpretation of Section 31 purposefully ignores the specific limitation on, and waiver of, remedies included later in the provision.  Specifically, the latter part of Section 31 provides that "[n]otwithstanding" the available remedies provided for therein, "if Senior Lender shall exercise any right or remedy under the Senior Loan Documents that is not in violation of this Agreement, including without limitation, any Enforcement Action, Mezzanine Lender *agrees not to object to, oppose, hinder, contest, interfere with or seek to enjoin or restrain any such action (whether through remedies of injunction, declaratory judgment or specific performance, the filing of a lis pendens, or otherwise)* in violation of this Agreement, *all of which remedies are hereby waived*." THS000690 (emphasis added).  Based on this limitation and waiver, Mezzanine Lender cannot use Section 31 as a basis to maintain the Adversary Proceeding or assert the Confirmation Objection, and cannot use the general grant of remedies in Section 31 to circumvent the restrictions in Section 9(d).

Finally, Mezzanine Lender's construction would turn the ICA on its head and violates well-settled contract interpretation principles.  The general language in Section 31 cannot be construed as a blanket exception to Section 9(d)'s specific and detailed prohibition on obstructionist conduct by Mezzanine Lender in connection with a Borrower Bankruptcy.  *See, e.g.*, *Rosoff Bros. v. State*, 39 A.D.2d 974, 976 (3d Dep't 1972) ("A specific contract provision may not be abrogated in favor of a general catchall clause.").  Additionally, Mezzanine Lender's interpretation would also make Section 9(d) a mere option, subject to Mezzanine Lender's unilateral veto; Mezzanine Lender could choose to disregard Section 9(d) at any point in time, merely by seeking specific performance or injunctive relief.  Such a result would be contrary to both the plain language of Section 9(d), which provides for no such exception or optionality, and the very purpose of an intercreditor agreement.

23

As such, Section 31 cannot be read, as Mezzanine Lender urges, to override the specific prohibitions on obstructionist conduct in Section 9(d) or to give Mezzanine Lender rights it bargained away in the ICA.

**B.  Mezzanine Lender Has Failed to Establish Any Basis to Relieve it of the Restrictions in Section 9(d)**

As Judge Drain recognized, in light of the plainly applicable restrictions in Section 9(d) of the ICA, it is incumbent on Mezzanine Lender to "show that it is relieved under some applicable principle" from those terms, and, as Judge Drain correctly found, Mezzanine Lender has failed to do so.  Confirmation Hr'g Tr. at 37:13-15; JA-003640.

Mezzanine Lender's core argument against enforcement of Section 9(d) is that a breach of the ICA, specifically Original Senior Lender's failure to provide a Purchase Option Notice, "is readily apparent," and, therefore, Mezzanine Lender should be excused from adhering to the restrictions on its conduct set forth in Section 9(d).  Opening Br. at 14.  But the terms of the ICA and the law conclusively negate Mezzanine Lender's position.

**i.  Pursuant to the Terms of the ICA, Mezzanine Lender Cannot Escape Enforcement of Section 9(d)**

The language in Section 11(a) itself limits the remedy if Senior Lender fails to give a Purchase Option Notice.  It specifically states:  "[t]he failure of [Senior Lender] to provide a [Purchase Option Notice] to [Mezzanine Lender] . . . ***shall have no adverse effect on [Senior Lender]*** other than the resulting extension of the time in which the [Purchase Notice] may be given . . . ."  THS000679-000680 (ICA § 11(a)).  Judge Drain correctly found that this specific limitation undermined Mezzanine Lender's argument that any failure to provide a Purchase Option Notice could relieve Mezzanine Lender of its obligations under the ICA.  Confirmation Hr'g Tr.; JA-003641 (38:23-39:5, quoting ICA § 9(d)); *see also id.* at JA-003636 (33:13-17) ("[T]hat [provision] suggests that your remedy is . . . an extension of time."); *id.* at JA-003636 (33:22-23)

24

(Section 11(a) is "more specific" than Section 31 because it "deals with the failure to provide the purchase option notice").

Indeed, permitting Mezzanine Lender to lodge the Confirmation Objection and prosecute the Adversary Proceeding prior to confirmation would impermissibly impose ***other adverse effects*** on Senior Lender.  Specifically, Senior Lender would be prohibited from enforcing the bargained-for prohibitions on Mezzanine Lender's obstructionist conduct as set forth in Section 9(d), and also be precluded from exercising certain of its own rights (such as confirming a bankruptcy plan and credit bidding).[5]  The existence (and magnitude) of these ***other adverse effects*** are unscored by the $5 million bond that Mezzanine Lender was required to post in order to obtain a two-month stay pending appeal.  Obviously, the adverse impacts that the bond protects against would be even greater if Senior Lender were forced to wait for the Adversary Proceeding to be resolved — an eventuality that could be months away[6] — prior to confirmation.  Thus, Mezzanine Lender

---

[5]     By and through the Adversary Proceeding, Mezzanine Lender is also further seeking to impose *another* adverse effect on Senior Lender by seeking to purchase the Senior Loan as of July 2020, the date it asserts it was entitled to a Purchase Option Notice, rather than "the date the Mezzanine Lender purchases the Senior Loan in accordance with Section 11" as provided in the ICA.  *See* THS000650 (ICA § 1(a), definition of "Loan Purchase Price").  If Mezzanine Lender were correct, TH Holdco would be unable to collect on the "accrued interest . . . and all expenses (including legal fees and expenses) incurred by Senior Lender in enforcing the terms of the Senior Loan Documents," *id.*, since July 2020, which TH Holdco would otherwise be entitled to recoup pursuant to the ICA.  Denying TH Holdco that recovery is undoubtedly an additional adverse effect on Senior Lender.

[6]     Mezzanine Lender argues that Judge Drain's "visceral belief that the Adversary Proceeding was not progressing was erroneous," and suggests that the Adversary Proceeding "was progressing as of June 30, 2022" and that "it was literally a matter of two months before the parties' motions could or would be filed and heard . . . ."  Opening Br. at 6-7.  These contentions are demonstrably false.  *See* Dkt. 264 ¶¶ 155-56; JA-003343-003344.  At the time of the Confirmation Hearing, no scheduling order had been entered in the Adversary Proceeding setting a timeline for the completion of discovery and dispositive motion practice.  The limited discovery conducted as of the Confirmation Hearing consisted of a production of just 40 documents by Mezzanine Lender (comprised of not a single email or text message).  No depositions had been taken and, indeed, the depositions that TH Holdco initially noticed for May needed to be adjourned due to Mezzanine Lender's deficient and dilatory document production.  Moreover, between the May 16, 2022

contention that there is no "'adverse effect' at all" from permitting Mezzanine Lender to pursue its Confirmation Objection and prosecute the Adversary Proceeding, Opening Br. at 14, defies credulity.

Additionally, Section 28 of the ICA, on which Judge Drain also relied, underscores that the parties' bargain was that the ICA would remain in place and binding for so long as the Senior Loan and the Mezzanine Loan remained outstanding, irrespective of any event other than those explicitly giving rise to a termination.[7]  Section 28 expressly provides that the ICA is a "continuing agreement" that remains in "full force and effect until" termination as a result of either certain specified events, none of which has occurred.  THS000689; *cf. Intrepid Invs., LLC v. Selling Source, LLC*, 165 A.D.3d 523, 524 (1st Dep't 2018) (because "the loan was never 'paid off,'" the remedies standstill provision of the intercreditor agreement "continued to apply to junior lenders").  As such, by its plain terms, the ICA, including Section 9(d), remains in full force and effect and should be enforced against Mezzanine Lender here.

### ii.    Original Senior Lender's Alleged Breach of the ICA, Even if Proven, Does Not Excuse Mezzanine Lender's Compliance with Section 9(d)

Additionally, the premise of Mezzanine Lender's argument — that it can escape Section 9(d) because a breach of the ICA is "readily apparent" (Opening Br. at 14) — is legally unsupportable.

Even if Mezzanine Lender could establish that Original Senior Lender breached the ICA by failing to give Purchase Option Notices, as a matter of law, that breach would be insufficient to

---

hearing and the June 30, 2022 Confirmation Hearing, Mezzanine Lender did not do anything to prosecute the Adversary Proceeding at all.  Mezzanine Lender's implication that the Bankruptcy Court rushed to enter the Confirmation Order without entertaining what would have been a short delay to fully resolve the Adversary Proceeding therefore does not past the smell test.

[7]    This provision is consistent with the very intent and purpose of an intercreditor agreement: to govern the relationship between lenders for so long as the loans in question are outstanding.

free Mezzanine Lender from the restrictions of Section 9(d) because the failure to provide a Purchase Option Notice is not a material breach of the ICA.   Judge Drain reached that very conclusion at the Confirmation Hearing, and his ruling was based on a correct analysis and application of the material breach doctrine.

It is axiomatic that not every breach excuses performance by the non-breaching party.  *See Medical Malpractice Ins. Ass'n v. Hirsch (In re Lavigne)*, 114 F.3d 379, 387-88 (2d Cir. 1997). Rather, only a "material breach" will excuse a counterparty's performance and, "for a breach of a contract to be material, it must go to the root of the agreement between the parties." *Frank Felix Assocs. v. Austin Drugs*, 111 F.3d 284, 289 (2d Cir. 1997) ("A party's obligation to perform under a contract is only excused where the other party's breach of the contract is so substantial that it defeats the object of the parties in making the contract."); *see also Callanan v. Keeseville, Ausable Chasm & Lake Champlain R.R. Co.*, 199 N.Y. 268, 284 (N.Y. 1910) (rescission "is not permitted for a slight, casual or technical breach, but, as a general rule, only for such as are material and willful, or, if not willful, so substantial and fundamental as to strongly tend to defeat the object of the parties in making the contract.").

Here, the plain language of the ICA negates Mezzanine Lender's contention that the failure to provide a Purchase Option Notice could constitute a material breach.   As set forth above, Section 11(a) expressly provides that the ***only adverse effect*** on Senior Lender for any failure to give a Purchase Option Notice is an extension of the time within which Mezzanine Lender may exercise the Loan Purchase Option.   THS000679-000680.   The necessary corollary of this limitation is that a breach of the requirement to give notice is ***not*** a material breach that would excuse Mezzanine Lender's compliance with other provisions of the ICA.

Further, it is evident from the ICA that providing notice concerning the existence of a purchase option event (or even the exercise of the purchase option) is not "the special purpose" of the ICA as would be required to establish materiality. *See Frank Felix*, 111 F.3d at 288, 289 (determining materiality requires consideration of the "special purpose" of the contract); *see also Toshiba Corp. v. Am. Media Int'l, LLC*, No. 12 Civ. 800, 2012 WL 3822759, at *5 (S.D.N.Y. Sept. 4, 2012) (holding that a breach was not material even if the breached provision was "an important reason" for the non-breaching party's entry into the contract, because the provision was not "***the*** reason" that the party submitted to the agreement's terms).

Rather, the "special purpose" of the ICA is to "provide for the relative priority of the Senior Loan Documents . . . and the Mezzanine Loan Documents" and to "evidence certain agreements with respect to the relationship between the Mezzanine Loan and the Mezzanine Loan Documents, on the one hand, and the Senior Loan and the Senior Loan Documents, on the other hand." THS000646 (ICA at 2, Recital H).  Indeed, virtually the entirety of the ICA is dedicated to this "special purpose." *See, e.g.*, THS000662-000663, ICA § 4 (rights to transfer the Senior Loan and the Mezzanine Loan); THS000663-000668, ICA § 5 (enforcement of the Mezzanine Loan Documents); THS000668-000672, ICA § 6 (amendment of the Senior Loan Documents and Mezzanine Loan Documents); THS000672-000673, ICA § 7 (subordination of the Mezzanine Loan and Mezzanine Loan Documents to the Senior Loan and Senior Loan Documents); THS000673-000675, ICA § 8 (subordination of payment rights); and THS000682-000683, ICA § 12 (subordination of consent and approval rights).  Mezzanine Lender has not (and cannot) contend that the "object of the parties" in entering into the ICA, as reflected by the agreement as a whole, would be "defeated" by the failure to provide a Purchase Option Notice such that

Mezzanine Lender is no longer bound by the other provisions of the ICA.  *See Frank Felix*, 111 F.3d at 289.

### iii.  Mezzanine Lender Cannot Seek to Enforce the ICA and Simultaneously Contend That it is not Bound by Section 9(d) Thereof

Finally, Mezzanine Lender's argument that it is not bound by Section 9(d) of the ICA is fundamentally irreconcilable with the Adversary Proceeding and Mezzanine Lender's effort to enforce the ICA.  On the one hand, Mezzanine Lender seeks specific performance (*i.e.*, enforcement) of the ICA in the Adversary Proceeding, and explicitly alleges that the ICA is valid and binding on Mezzanine Lender.  Adversary Compl. ¶ 48; JA000503 ("[T]he Mezzanine Lender and the New Senior Lender are bound by the terms of the ICA, which constitutes a valid, binding and enforceable written contract supported by fair and adequate consideration.").  On the other hand, Mezzanine Lender claims that it is relieved of its obligations under the ICA due to Original Senior Lender's alleged material breaches of Section 11(a), and Mezzanine Lender is therefore not bound by the restrictions in Section 9(d).  Mezzanine Lender cannot have it both ways.

A plaintiff "may not pick and choose which provisions suit its purposes, disclaiming part of a contract while alleging breach of the rest."  *God's Battalion of Prayer Pentecostal Church, Inc. v. Miele Assocs., LLP*, 6 N.Y.3d 371, 374 (2006) (where plaintiff's complaint alleged that defendant breached the agreement, plaintiff could not disclaim applicability of arbitration provision therein).  Likewise, a "non-breaching party cannot elect to continue to demand the benefits under the breached contract while ignoring its corresponding obligations."  *Pavarini McGovern, LLC v. Waterscape Resort LLC (In re Waterscape Resort LLC)*, 514 B.R. 384, 392 (Bankr. S.D.N.Y. 2014); *see also Sofi Classic S.A. de C.V. v. Hurowitz*, 444 F. Supp. 2d 231, 238 (S.D.N.Y. 2006) ("one may not both affirm and disaffirm a contract or take a benefit under an instrument and repudiate it.").

By filing the Adversary Proceeding and demanding specific performance of the ICA, Mezzanine Lender elected to affirm the contract.  As such, Mezzanine Lender cannot now (selectively) disaffirm the ICA, and its argument that it is not bound by Section 9(d) of the ICA should be rejected.

Accordingly, Mezzanine Lender cannot rely on any (alleged) failure to give notice of a Purchase Option Event to undermine the import and applicability of the restrictions in Section 9(d), and it is not entitled to "a reasonable opportunity to obtain a ruling in the Adversary Proceeding" prior to confirmation, Opening Br. at 14, as it claims.  This Court therefore should affirm the entry of the Confirmation Order.

### C.    Resolution of the Adversary Proceeding is Not a Threshold Issue for Confirmation of TH Holdco's Plan.

Given the foregoing, the Bankruptcy Court correctly recognized that a resolution of the Adversary Proceeding should not be a "gating item" for confirmation of TH Holdco's Plan.  Apr. 6 Hr'g Tr.; JA-000989 (12:10).  While Mezzanine Lender contends that that ruling is "reversible error" because the outcome of the Adversary Proceeding could determine who is the "rightful owner of the Senior Loan" and entitled to propose a confirmation plan, Opening Br. at 15-16, Mezzanine Lender is wrong for several reasons.

*First*, and most critically, resolution of the Adversary Proceeding cannot be a threshold issue for confirmation of the Plan because Mezzanine Lender was not entitled to commence, and is not entitled to maintain, the Adversary Proceeding based on the restrictions in Section 9(d).[8]

As detailed above, Section 9(d) of the ICA contains explicit language prohibiting Mezzanine Lender from taking certain actions in any Borrower Bankruptcy without Senior

---

[8]    Prior to confirmation of the Plan, TH Holdco moved for judgment on the pleadings in the Adversary Proceeding based on, *inter alia*, Section 9(d) of the ICA.  *See* Adv. Pro. Dkt. 14-16. That motion remains pending.

Lender's prior written consent, including but not limited to:  (i) commencing any action; (ii) filing any motion, claim or application; (iii) taking any action adverse to Senior Lender's enforcement of its claim; or (iv) challenging the validity or amount of any claim by Senior Lender.  THS000675-000677 (ICA § 9(d)).  There can be no dispute that by filing the Adversary Proceeding, which Mezzanine Lender obviously did without TH Holdco's consent, Mezzanine Lender took an action that is explicitly and specifically barred by the ICA.  *Id.*  Thus, even if the claims in the Adversary Proceeding were meritorious (and they are not), Mezzanine Lender would be precluded from asserting them in the Adversary Proceeding (*i.e.*, in the context of a Borrower Bankruptcy). Therefore, as a matter of logic, the adjudication of the Adversary Proceeding cannot possibly be a "gating item" for confirmation of TH Holdco's Plan.

*Second*, even if Mezzanine Lender could maintain the Adversary Proceeding, it should not be a gating item for confirmation of the Plan because any impact that the Adversary Proceeding could have is far too remote and speculative.

In an effort to trace a straight line from the Adversary Proceeding to plan confirmation, Mezzanine Lender purposefully mischaracterizes (and aggrandizes) the impact of a favorable determination on the merits.   Specifically, Mezzanine Lender asserts that the Adversary Proceeding would determine "whether Mezzanine Lender or TH Holdco is the rightful owner of the Senior Loan[,]" Opening Br. at 15, and that "TH Holdco would *not* have standing if Mezzanine Lender were provided its opportunity to purchase the Senior Loan[,]" *id.* at 16-17.   Neither statement is correct.  Indeed, Mezzanine Lender is not seeking a determination that TH Holdco is not the present holder of the Senior Loan in the Adversary Proceeding.

The breach alleged by Mezzanine Lender in the Adversary Proceeding is the failure to provide a Purchase Option Notice and, thus, the relief that Mezzanine Lender would be entitled to

(if successful on its claim for specific performance) is the issuance of a Purchase Option Notice. But a Purchase Option Notice is but the first step in becoming the senior claimholder and does not mean *ipso facto* that TH Holdco would automatically surrender its position as the Senior Lender to Mezzanine Lender, or that Mezzanine Lender will be able to step into TH Holdco's shoes as a proponent of a Chapter 11 plan and supplant the Plan.

Rather, if the Bankruptcy Court required TH Holdco to issue a Purchase Option Notice, Mezzanine Lender would be required to pay a purchase deposit of 10% of the Loan Purchase Price within 30 days of receiving the Purchase Option Notice. Mezzanine Lender would then need to obtain financing sufficient to fund the balance of the Loan Purchase Price (which is to be determined on the date of the closing) and consummate the purchase of the Senior Loan within 90 to 120 days thereafter. Mezzanine Lender would next need to file a Rule 3001 notice of transfer of claim, which would need to survive any objections. Then, if Mezzanine Lender ultimately succeeded to the senior claimholder's position, it would need to provide sufficient funding to pay the Chapter 11 administrative expenses and tax claims in full (over $3 million and growing) (JA002604-002607), and seek to garner support for its proposed plan from the Debtors and other creditors. Finally, Mezzanine Lender would then need to prove up all of the elements of a confirmed plan to have its alternate plan confirmed by the Bankruptcy Court, including feasibility. None of these steps (let alone all of them) is a foregone conclusion.

Moreover, collectively, these steps would take months to complete after resolution of the Adversary Proceeding. But what matters is who holds the Senior Loan now, not who could own the Senior Loan in the future in certain hypothetical future scenarios, and the Bankruptcy Court properly recognized that TH Holdco is the current holder of the Senior Loan. JA-000992.

Finally, Mezzanine Lender repeatedly gripes that if the Adversary Proceeding is not resolved prior to confirmation of the Plan, "Mezzanine Lender may be precluded from obtaining any meaningful relief."  Opening Br. at 17-18; *see also id.* at 17 ("If the Confirmation Order is permitted to stand, Mezzanine Lender will . . . have no effective remedy").

That is not the case.  As Judge Drain recognized, in light of the restrictions in Section 9(d) of the ICA, Mezzanine Lender may not be able to assert its claims in the context of a Borrower Bankruptcy, but it may nonetheless be entitled to pursue a (potential and unasserted) claim for monetary damages.[9]  *See, e.g.*, May 16 Hr'g Tr.; JA-002382-002383 (35:24-36:2) (explaining that "in light of those limitations" in Section 9(d) of the ICA, Mezzanine Lender's claims can "be raised in a suit for money for a lost opportunity to exercise an option.").  That may not be Mezzanine Lender's preferred outcome, but it is consistent with the terms and the purpose of the ICA, which Mezzanine Lender, as a junior lender with subordinated rights, knowingly entered into.  Mezzanine Lender's protestations about the inequities that would result from letting the Confirmation Order stand are, therefore, a red herring, and in any event, are not grounds to allow Mezzanine Lender to avoid the terms it agreed to in the ICA.

Moreover, it is disingenuous for Mezzanine Lender to advocate that resolution of the Adversary Proceeding should be a gating item for confirmation when it is Mezzanine Lender that has kept the gate shut.  As Judge Drain noted, Mezzanine Lender demonstrated a lack of diligence in asserting its rights under the ICA (which purportedly accrued in the summer of 2020) and in prosecuting the Adversary Proceeding.  *See* Confirmation Hr'g Tr.; JA-003669 (66:15-19) ("[The

---

[9]    Mezzanine Lender repeatedly asserts that Section 31 prohibits it from seeking damages. *See* Opening Br. at 6; *see also* Confirmation Hr'g Tr.; JA-003635 (32:3-4); *id.* at JA-003637 (34:4-5).  However, the plain language of Section 31 does not support this contention.  Section 31 provides that damages are **inadequate** not that they are unavailable.  THS000690 (ICA § 31). While damages may be unavailable to Mezzanine Lender for other reasons (and TH Holdco reserves all rights with respect to any such claim), they are not barred by Section 31 of the ICA.

Adversary Proceeding] hasn't been in the two years of this case [i.e., the Bankruptcy Proceeding] been brought anywhere close to a conclusion, and I don't think that in light of that the party who I think has had the onus to bring it to something, at least a lot closer to conclusion than we have here, can say that they can keep the gate shut.").  As such, Mezzanine Lender cannot credibly take the position that confirmation should await resolution of its claims.  Indeed, to hold otherwise would effectively give Mezzanine Lender an injunction that it never moved for, and with respect to which it has not — and cannot — satisfy the burden of proof.

## II.  THE BANKRUPTCY COURT CORRECTLY OVERRULED MEZZANINE LENDER'S OBJECTION TO TH HOLDCO'S VOTING OF MEZZANINE LENDER'S SECURED CLAIM IN ACCORDANCE WITH TH HOLDCO'S RIGHTS UNDER SECTION 9(d) OF THE ICA.

### A.  Section 9(d) Expressly Permits TH Holdco to Vote Mezzanine Lender's Claim and the Bankruptcy Court Correctly Overruled Mezzanine Lender's Objection to the Contrary

By its terms, Section 9(d)(ii) of the ICA permits Senior Lender to "vote in any [Borrower Bankruptcy] any and all claims of Mezzanine Lender . . . in connection with any . . . [such] Proceeding, including without limitation, the right . . . to vote to accept or reject a plan." THS000675-000676 (ICA § 9(d)(ii)).  In accordance with that provision, TH Holdco voted Mezzanine Lender's secured claim in the Certification of Ballots, which accepted the Plan on behalf of Class 11.  Confirmation Hr'g Tr.; JA-003618 (15:16-25).[10]

---

[10]     Intercreditor agreements providing one creditor with the right to vote on behalf of another creditor have been found enforceable pursuant to Section 510 of the Bankruptcy Code.  *See, e.g.*, *In re Ion Media Networks, Inc.*, 419 B.R. 585, 59 (Bankr. S.D.N.Y. 2009) (enforcing intercreditor agreement under section 510(a) pursuant to which junior creditor waived right to object to plan confirmation); *see also In re Coastal Broadcasting Systems, Inc.*, 2013 WL 3285936 (D.N.J. 2013), aff'd, 570 Fed. Appx. 188 (3d Cir. 2014) (affirming bankruptcy court's enforcement of subordination through section 510(a) and assignment of junior's voting right to senior in connection with confirming plan of reorganization).

While Mezzanine Lender acknowledges (as it must) that, pursuant to Section 9(d), TH Holdco has the right to vote Mezzanine Lender's secured claim, Mezzanine Lender contends that its vote was "impermissible" here based on "the preexisting and material breaches of the ICA by Original Lender . . . by failing to provide Mezzanine Lender with the required notices of purchase option events."  Opening Br. at 18-19.  However, as detailed above and as Judge Drain found, the failure to provide a purchase option notice does not constitute a material breach of the ICA and, accordingly, Mezzanine Lender's argument fails.  Confirmation Hr'g Tr.; JA-003644 (41:10-22).

The cases that Mezzanine Lender relies on do not provide otherwise.  *See* Opening Br. at 18.  Rather, they confirm that a breach is only material where, unlike here, the very purpose of the agreement has been frustrated.  *See, e.g.*, *Merrill Lynch & Co. v. Allegheny Energy, Inc.*, 500 F.3d 171, 186-87 (2d Cir. 2007) (cumulative effect of several allegedly breached warranties in a purchase agreement could constitute a material breach that "defeat[ed] the object of the parties in making the contract"); *Nadeau v. Equity Residential Properties Management Corp.*, 251 F. Supp. 3d 637, 639, 644 (S.D.N.Y. 2017) (where one party previously breached the requirement to arbitrate, the breaching party could not subsequently enforce the arbitration agreement and require the non-breaching party to arbitrate a dispute).

Given the foregoing, the Bankruptcy Court correctly held that Mezzanine Lender "has not established a basis to relieve it of its obligations under Section 9(d) of the intercreditor agreement. And therefore, its vote which it submitted notwithstanding that provision, would not be counted." Confirmation Hr'g Tr.; 003642 (39:14-17).  This Court should affirm that ruling.

**B.** **Whether Class 11 Votes For or Against the Plan is Immaterial Given the** ***Charter Communications*** **and** ***Transwest Properties*** **Decisions Followed by the Bankruptcy Court**

Class 3 is an impaired creditor class that voted to accept the Plan and thus, the requirement

in Section 1129(a)(10) of the Bankruptcy Code that at least one impaired class of creditors vote in

favor of the Plan has been met here.  The Bankruptcy Court ruled that:

> [T]he law in the Southern District of New York is as stated in *In re Charter Communications*, the case that I previously cited.  1129, by its plain terms, where there is one plan that involves multiple debtors, even though they're not substantive consolidated, needs only a single accepting impaired class to vote in favor of the plan.
>
> I appreciate that courts in other districts, although I don't believe any appellate court, has – have rules to the contrary and that it is a pre-debtor rule or per debtor's plan rule as opposed to the overall plan.  But I'll follow the precedent in the Southern District which has been established, and I'm not prepared to deviate from it.  I'll also note that the only appellate court that has addressed this issue as far as I know has also ruled that way in *In re Transwest Properties,* again 881 F.3d 724, 729 (9th Cir. 2018).

Confirmation Hr'g Tr.; 003639-003640 (36:17-37:6).

Therefore, even if Mezzanine Lender's vote in Class 11 against the Plan were effective,

the Plan is still confirmable based on the Class 3 vote in favor or as a cramdown of Class 11 under

Section 1129(b) of the Bankruptcy Code.

Neither Mezzanine Lender nor the Debtors appealed that aspect of the Bankruptcy Court's

ruling in either of their statement of issues on appeal nor did they address those cases or that issue

in their opening briefs and has therefore waived that argument.[11]  Therefore, even if Class 11 had

---

[11]     Appellate courts only have jurisdiction "over rulings designated in the notice of appeal." *Portelos v. Hill*, 719 F. App'x 37, 39 (2d Cir. 2017) (stating that "we have jurisdiction only over the particular ruling mentioned in the notice of appeal" under Fed. R. App. P. 3); *In re Uni-Rty Corp.*, No. 96 CIV. 4573 (DAB), 1998 WL 299941, at *3 (S.D.N.Y. June 9, 1998), *aff'd*, 175 F.3d 1008 (2d Cir. 1999) ("Because Appellants' failed to designate this as an issue on appeal in their Designation and Statement pursuant to Federal Rule of Bankruptcy Procedure 8006, the Court finds that Appellants have waived this issue.").  While "mere technicalities should not stand in the way of consideration of a case on its merits," an appellate court does not have authority to

been deemed to have voted against the Plan, the Plan was confirmed due to the accepting vote of Class 3 and the Bankruptcy Court's findings that the other requirements to confirm a Chapter 11 plan had been met.

Further, neither Mezzanine Lender nor the Debtors appealed or briefed the Bankruptcy Court's finding on cramdown:

> The plan on the record before me also appropriately treats the Mezz lender in regard to its treatment in that any recovery it would receive as the lender to the parent Mezz debtor, which is structurally, of course, junior to the hotel debtor and the residential debtor under the subordination agreement and therefore under section 510 of the bankruptcy code, would need to be paid over to the senior lender, TH Holdco, unless and until TH Holdco is paid in full at which point if there is anything to recover at that claim level, it would be recovered under the plan by the Mezz lender. So the plan also satisfies, to the extent applicable, the absolute priority rule of section 1129(b), almost by definition as to how the plan is drafted and it's premised upon a sale of the underlying collateral.

Confirmation Hr'g Tr.; JA- 003684 (81:9-22).

> **C.     The Plan is a Separate Plan for Each of the Three Bankruptcy Estates and Was Confirmed as to the Hotel and Residential Estates Even if Class 11 Voted Against the Plan in the Mezz Estate and Mezzanine Lender Has No Standing Against the Hotel Estate or the Residential Estate**

TH Holdco expressly provides in its Plan that:

> The Plan constitutes a separate chapter 11 plan for each Debtor. The classifications set forth in Classes shall be deemed to apply to each Debtor identified, except that Class 3 shall apply to each of the Debtors. TH Holdco reserves the right to proceed to seek confirmation with respect to the Plan as to each Debtor separately and to proceed to confirm the Plan with respect to some but not all of the Debtors.

---

waive jurisdictional requirements. *United States v. Caltabiano*, 871 F.3d 210, 215 (2d Cir. 2017). *Accord In re Trans. World Airlines, Inc.*, 145 F.3d 124, 132–33 (3d Cir. 1998); *In re GGM. P.C.*, 165 F.3d 1026, 1032 (5th Cir. 1999). This is reinforced by the fact that the issue was not raised or briefed in Mezzanine Lender or Debtors' opening briefs.

JA-003519.  Despite this clear language, Mezzanine Lender attempts to argue that its "one Plan" because the plan for each Estate is in the same physical document but cites no law in support of that proposition.  Opening Br. at 18-19.[12]  The Bankruptcy Court, however, ruled as follows:

> I'll note further, although I'm considering the plan as a whole, including as to the mezz debtor, that the plan proponent is prepared to go forward with confirmation just as to the 85 Hotel debtor and the 85 Residential debtor and leaving the mezz debtor behind.  So if I am wrong on both of those two holdings [above], the plan would still go forward as to the other two debtors.

Confirmation Hr'g Tr.; JA-003642 (39:18-24).

This aspect of the ruling was not appealed by either Mezzanine Lender or by the Debtors and thus, is binding.  Therefore, any alleged error as to the voting in Class 11 in the Mezzanine Estate is not relevant to and does not impact the confirmed Plan for the Hotel Debtor and the confirmed Plan for the Residential Debtor and TH Holdco is free to close its credit bid for the Hotel Property and the Residential Property under those Plans.

---

[12]     Contrary to Mezzanine Lender's assertion, bankruptcy courts within the Second Circuit frequently confirm a single filed plan containing separate plans of reorganization with respect to each debtor, and separate physical plans per estate are not necessary.  *In re Sabine Oil & Gas Corp.*, No. 15-11835 (SCC), 2016 WL 11565432, at *55 (Bankr. S.D.N.Y. July 27, 2016) ("[T]he Plan constitutes a separate chapter 11 plan of reorganization for each Debtor and the classifications set forth in Classes 1 through 10 shall be deemed to apply to each Debtor, except for Class 11, which only applies to Sabine."); *In re CIT Grp. Inc.*, No. 09-16565 (ALG), 2009 WL 4824498, at *2 (Bankr. S.D.N.Y. Dec. 8, 2009) (approving disclosure statement and indicating that "[t]he Plan consists of two separate plans jointly proposed and filed by each of the Debtors."); *In re Melinta Therapeutics, Inc.*, 623 B.R. 257, 267 (Bankr. D. Del. 2020) (noting one plan was proposed jointly, containing separate plans for each debtor for voting purposes); *Commercial Bankruptcy Litigation* § 10:17, J. Friedland (Jan. 2022) (noting that in complex chapter 11 cases with multiple affiliates, debtors "often file a 'joint' plan . . . that, although set forth in a single plan document applicable to each debtor proponent, technically constitutes a separate plan as to each debtor entity.").  Further, it is permissible for a court to confirm one estate's plan, but not another.  *See, e.g.*, *Sabine Oil*, 2016 WL 11565432 at *60 (approving plan that stated "[i]f the Plan is not confirmed as to one or more of the Debtors, but the other Debtors determine to proceed with the Plan, then the Debtor(s) as to which the Plan may not be confirmed shall be severed from, and the Plan shall not apply to, such Debtor(s).").

Further, Mezzanine Lender is not even a creditor of the Hotel Estate or the Residential Estate and therefore, has no standing to appeal the confirmed Plans for the Hotel Estate and for the Residential Estate.  *See e.g.*, Ex. C to Disclosure Statement; JA-002607.  The proof of claim filed by Mezzanine Lender only relates to the Mezzanine Estate.  *Id.*

## **CONCLUSION**

The decision of the Bankruptcy Court should be affirmed for the reasons set forth herein and in the record.

Dated: September 9, 2022
New York, New York

**DENTONS US LLP**
*s/ Lauren Macksoud*
Lauren Macksoud
Sarah M. Schrag
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 768-6700
Fax: (212) 768-6800
Email: lauren.macksoud@dentons.com
            sarah.schrag@dentons.com

-and-

Robert Richards  (admitted *pro hac vice*)
**DENTONS US LLP**
233 S. Wacker Drive
Suite 5900
Chicago, IL 60606
Telephone: (312) 876-8000
Facsimile: (312) 876-7934
Email: robert.richards@dentons.com

**FRIED, FRANK, HARRIS, SHRIVER &
JACOBSON LLP**

*/s/ Emilie B. Cooper*
*Emilie B. Cooper*
*Harrison D. Polans*
*One New York Plaza*
*New York, New York 10004-1980*
*(212) 859-8000*
*emilie.cooper@friedfrank.com*
*harrison.polans@friedfrank.com*

*Attorneys for Defendant
TH Holdco LLC*

39

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Bankruptcy Procedure 8015(a)(7), the undersigned certifies that this opening brief complies with the type volume limitation and that this opening brief contains 12,763 words (excluding the cover page, tables, signature blocks and required certificates) as counted by the computer program used to prepare this opening brief.

DATED: September 9, 2022

**DENTONS US LLP**

/s/ *Lauren Macksoud*
Lauren Macksoud
Sarah M. Schrag
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 768-6700
Fax: (212) 768-6800
Email:  lauren.macksoud@dentons.com
        sarah.schrag@dentons.com

-and-

Robert Richards  (admitted *pro hac vice*)
**DENTONS US LLP**
233 S. Wacker Drive
Suite 5900
Chicago, IL 60606
Telephone: (312) 876-8000
Facsimile: (312) 876-7934
Email: robert.richards@dentons.com

*Counsel to TH Holdco LLC*

40

122287305